MRS. TOMMIE CALDWELL ET AL. V. HOUSTON & TEXAS CENTRAL
RAILWAY COMPANY.

Decided February 4, and March 11, 1909.

1.—Negligence—Discovered Peril—Person Lying on Track.

Questioning the correctness of a charge which held defendant liable for failure of employes operating a train and discovering an unidentified object on the track only from the time they were able to recognize such object as a human being lying down, the court decline to reverse a judgment for defendant, because the undisputed evidence showed that the train could not have been stopped in time to avoid striking him when the object was first discovered.

2.—Same—Contributory Negligence.

A person run over while lying unconscious upon a railway track at night is prima facie guilty of contributory negligence, and in the absence of evidence rebutting such presumption the railway company is not liable for failure of those operating its train to sooner discover him.

3.—Same—Injury to Licensee.

A license to use a railway track as a footpath does not authorize its use as a place to lie or sit down upon, and one so doing cannot invoke the care due to a licensee.

### ON MOTION FOR REHEARING.

4.—Same—Unconsciousness from "Providential Cause."

The presumption that one run over at night while lying unconscious on a railway track was guilty of contributory negligence is not rebutted nor an inference that he was disabled from "providential causes" warranted by evidence that he had previously been subject at times to "spells" of helplessness and suffering (acute attacks following overeating) where the proof also showed that he left town to walk home on the track that night in a condition of intoxication variously described by the witnesses as "drinking," "drunk," or "staggering."

Appeal from the District Court of Lee County. Tried below before Hon. Ed R. Sinks.

*Watson & Simmang* and *J. N. Storey*, for appellants.—If, when the trainmen discover an object upon the track, they fail to exercise ordinary care to determine whether it is a human being, and that object could have been determined to be a man after the discovery, by the use of ordinary care, in ample time to stop the train and prevent the injury, the failure to use such care is actionable negligence, for which the plaintiff may recover. Houston & T. C. R. R. v. Sympkins, 54 Texas, 615; San Antonio & A. P. R. R. v. McMillan, 100 Texas, 562; Houston & T. C. R. R. v. Wallace, 21 Texas Civ. App., 394; Fiedler v. R. R., 107 Mo., 645; Le May v. Railroad, 105 Mo., 361; Tucker v. Norfolk & W. R. R., 92 Va., 549; Frick v. St. Louis, K. C. & M. R. R., 75 Mo., 595; Williams v. Kansas City S. & M. R. R., 9 S. W., 574; Burg v. Chicago, R. I. & P. R. R. Co., 90 Iowa, 106; Texas & P. Ry. Co. v. Brannon, 43 Texas Civ. App., 531; Railway Co. v. O'Donnell, 90 S. W., 888.

Where an employe and licensee falls upon the railroad track and is stricken by providential causes, thereby becoming helpless to such an extent as to be unable to extricate himself from his position of danger,

or becomes unconscious, the trainmen in charge of a moving train are then required to exercise ordinary care to discover such person upon its track, and a failure to exercise such care constitutes negligence on the part of the railway for which they would be liable. Houston & T. C. Ry. Co. v. Sympkins, 54 Texas, 616; San Antonio & A. P. Ry. Co. v. Mettasch, 26 S. W., 130; Railway Co. v. Shiflet, 94 Texas, 140; Texas & P. Ry. Co. v. O'Donnell, 58 Texas, 44; Evansich v. Gulf, C. & S. F. R. R., 57 Texas, 126; Gulf, C. & S. F. Ry. Co. v. Cunningham, 30 S. W., 367; Texas & P. Ry. Co. v. Watkins, 88 Texas, 23; Texas & P. Ry. Co. v. Watkins, 26 S. W., 760; Texas & P. Ry. Co. v. Minnie L. Fletcher, 6 Texas Civ. App., 737; St. Louis & S. F. Ry. Co. v. Christian, 8 Texas Civ. App., 247; Texas & P. Ry. Co. v. Roberts, 2 Texas Civ. App., 112; Railway v. Ryon, 70 Texas, 58; Railway Co. v. O'Donnell, 90 S. W., 888.

Railroad employes in charge of moving trains must exercise ordinary care to discover employes, licensees and other persons lawfully upon its track. Texas & P. Ry. Co. v. Watkins, 88 Texas, 23; Texas & P. Ry. Co. v. Watkins, 26 S. W., 760; International & G. N. Ry. Co. v. Brooks, 54 S. W., 1057; Gulf, C. & S. F. Ry. Co. v. Matthews, 89 S. W., 983; Galveston, H. & S. A. R. R. v. Lester, 24 Texas Civ. App., 468; Douglas v. Central Texas, etc., Ry. Co., 26 S. W., 892; Houston & T. C. R. R. v. O'Donnell, 90 S. W., 888.

*Baker, Botts, Parker & Garwood* and *W. B. Garrett,* for appellee.— That the deceased was a trespasser and guilty of contributory negligence as a matter of law. Railway Co. v. Matthews, 32 Texas Civ. App., 137; Railway Co. v. McDonald, 52 S. W., 649; Railway Co. v. Shiflet, 94 Texas, 139; Smith v. Railway Co., 78 S. W., 556; Cockrel v. Railway Co., 82 S. W., 529; Railway Co. v. Shiflet, 94 Texas, 140; Kuehn v. Railway Co., 10 Texas Civ. App., 650; Traction Co. v. Kelleher, 107 S. W., 64; Railway Co. v. Townsend, 82 S. W., 804.

That deceased, being guilty of contributory negligence, the employes of the train owed him no duty, except to use all the means at hand, consistent with the safety of the train and passengers, to stop the train and prevent the injury, after his position and peril as a human being was actually discovered on the track. Railway Co. v. McMillan, 100 Texas, 562; Traction Co. v. Kelleher, 107 S. W., 64; Railway Co. v. Shetter, 94 Texas, 196; Railway Co. v. Staggs, 90 Texas, 458; Railway Co. v. Breadow, 90 Texas, 26; Railway Co. v. McGee, 92 Texas, 621; Electric Railway v. Conn, 100 S. W., 1021; Railway Co. v. O'Donnell, 92 S. W., 409; Kelley v. Railway Co., 101 S. W., 1166; Railway Co. v. Ramsey, 81 S. W., 825; Taylor v. Electric Co., 85 S. W., 1019; Masser v. Railway Co. (Ia.), 27 N. W., 779; McLaren v. Railway Co. (Ind.), 8 Am. & Eng. R. R. Cases, 217; Gaynor v. Railway Co., 100 Mass., 214; Railway Co. v. Godfrey, 71 Ill., 500; Sheffer v. Railway Co. (Minn.), 21 N. W., 711; Railway Co. v. See (Ky.), 79 S. W., 254; Tucker v. Railway Co. (Va.), 24 S. E., 230; Blankenship v. Galveston, H. & S. A. Ry. Co., 15 Texas Civ. App., 82.

HODGES, Associate Justice.—Mrs. Tommie Caldwell, as the

surviving widow of George Caldwell and the next friend of her minor children, instituted this suit against the appellee to recover damages for the alleged negligent killing of her husband. It is alleged that Caldwell was at the time lying upon the track of the defendant company; that his perilous situation was discovered by the engineer and brakeman in charge of the train that ran over and killed him in sufficient time to enable them by the exercise of proper care to avoid the collision, but that they negligently failed to exercise this care. It is also alleged that Caldwell was one of the appellee's section foremen, and that on this occasion he was on his way home, traveling along the appellee's track, where he had the right to walk; that the track at this point was habitually and customarily used by the public as a footpath, with the knowledge and consent of the railway company, and that in thus using the path Caldwell was a licensee; that the trainmen were charged with the duty of keeping a lookout at that place for the presence of persons who might be so using the track; that while Caldwell was walking along said path he was stricken with a "providential illness and fell thereon from a providential cause; . . . that while he lay upon the track in that condition, unable to move, the defendant's train ran over and killed him."

Negligence is alleged as consisting of a failure on the part of the trainmen to keep a proper lookout to discover the presence of Caldwell upon the track, he being as to that place a licensee, and in failing to use ordinary care to discover the deceased upon the track after he has fallen thereon from "providential cause."

From a verdict in favor of the defendant below this appeal is prosecuted.

Caldwell was one of the appellee's section foremen and lived in or near the town of Giddings, up the track from the depot. On the night of the 22d day of July, 1907, after having spent some time in town, he started for his home. He was accompanied as far as the depot by a witness who testified in the case. The witness states that at that time deceased was considerably under the influence of whisky, so much so that he staggered as he walked. They separated about 11:30 o'clock. As Caldwell started up the track toward his home witness asked him if he "could make it home," to which he says deceased answered that he thought he could. There is some conflict, however, as to whether Caldwell was in fact drunk on that occasion. At 12:50 o'clock on the same night one of appellee's trains was due from the west, and it came in on time. It was this train which ran over and killed Caldwell. In order to show the circumstances under which the killing occurred, the appellants placed the engineer and brakeman in charge of that train on the stand, from whom the following details were obtained:

Theirs was a mixed train, consisting of five freight cars, three passenger coaches and one sleeper. They were due at Giddings at 12:50 that night and were coming in on time. When within a short distance of the station, and after having passed the whistling post, they discovered an object about 250 or 300 feet in front of them on the track. Neither of them could tell what it was, but thought it was probably a

bank of cinders, a calf or a dog. They say they could not see plainly ahead by reason of the fact that the train was at that point passing around a curve, and the headlight shone to the left of the track. When within 75 or 80 feet of the object the brakeman, who was at the time in the place usually occupied by the fireman, discovered that the object was a man, and immediately so informed the engineer. The latter says he applied his brakes and partially applied the reverse lever, but was unable to stop the train in time to prevent running over the man. The man proved to be Caldwell, who was at the time lying upon his back across the track, with his feet over the south rail. After being struck, his body was dragged by the train 435 feet from where he was lying.

The court refused to charge upon any issue except that of discovered peril. In addition to the general charge on that subject the following special charge was given at the instance of the appellee.

"In this case the jury are instructed that in considering this case you are not authorized to consider whether or not the employes in charge of said train, in the exercise of ordinary care, could have discovered or might have discovered the deceased as a man lying upon the track, but the question submitted to you, and the only question for you to determine, is whether or not said employes in charge of said train, in the exercise of such care, actually discovered the deceased as a man lying on the track in time to stop the same to prevent striking him."

We do not subscribe to the legal doctrine embodied in that charge; neither do we think it is supported by the case of San Antonio & A. P. Ry. Co. v. McMillan, 100 Texas, 562, 102 S. W., 103, decided by the Supreme Court of this State. The doctrine announced in that case falls little short of permitting a railway company to escape civil liability for killing a human being upon evidence sufficient to convict the employes in charge of the train in a criminal prosecution for negligent homicide. The charge given in this case would permit the employes in charge of the train, after having observed an object on the track in front of the engine, which might upon closer inspection prove to be a human being in a helpless condition, to deliberately turn their eyes away and carelessly destroy his life. We think it is exacting little enough of such employes to require that under such circumstances they exercise at least ordinary care to ascertain what the object is; and if by reason of a failure to exercise such a precaution human life is sacrificed, the company should be held liable for damages.

However, we do not think the case should be reversed because of the error discussed. If the proper verdict has been returned and a correct judgment entered, the case will not be reversed merely because of an error which could not have affected the disposition which should have been made of it. Galveston & W. Ry. Co. v. City of Galveston, 91 Texas, 17; Texas & P. Ry. Co. v. Purcell, 91 Texas, 585. Under the evidence introduced by the appellants no other verdict could have been rendered, for the reason that this evidence shows that even if the engineer had used his best efforts from the time he discovered the object on the track he could not have avoided the collision. He was

plaintiff's witness, and testified that his train was a mixed train and about 450 feet in length; that such a train could not be stopped within less than its length. He further testified that he made every possible effort to stop the train after being notified that he was about to run over a man, and the evidence shows that the train ran about 550 feet before it came to a stop. From this we think the conclusion is irresistible that the train could not have been stopped within 300 feet, the distance which the body of Caldwell was when first discovered as an indistinct object on the track. The burden rested on the appellants to prove the negligence charged, that the discovery of the peril of the deceased was made within such time as to enable the employes in charge of the train by the exercise of the proper care to avoid the collision. Luna v. Missouri, K. & T. Ry. Co., 73 S. W., 1061; St. L. & S. F. Ry. Co. v. Townsend, 63 S. W., 994; 8 Ency. of Evidence, 854, and cases there cited.

There was no error in refusing the special charges submitting the issue as to whether the trainmen exercised ordinary care in keeping a lookout for a person on the track at that place. We may concede that the track was commonly used by persons as a path, and that as to persons using it in that manner there was a duty to keep a lookout; but it does not follow that the company would be liable for the failure of its servants to maintain a lookout for a person lying down upon the track. A license to use the track or right of way for a footpath does not include the right to also use it as a place whereon to lie or sit. In any view that can be taken of the case the deceased was, prima facie, guilty of contributory negligence, as a matter of law, in being upon the track in the manner he was; and there was absolutely no evidence sufficient to rebut that presumption.

We think the testimony was such that the court should have directed a verdict in favor of the appellee.

The judgment is accordingly affirmed.

### ON MOTION FOR REHEARING.

In disposing of this case in the original opinion we assumed that the deceased was guilty of contributory negligence as a matter of law in being upon the track of the railroad at the time and place he was when killed. The facts relied upon to refute this assumption are: That there was evidence sufficient to justify a finding by the jury that Caldwell was a licensee and had a right to use the track of the railroad; and further, that after he went on the track on this occasion he was stricken with a sudden illness which rendered him unable to get out of the way of moving trains.

There was testimony tending to show to some extent a use of the track at that place as a footpath, without any known objection from the railway company; although the trainmen testified that they had never known of its being so used. The deceased was not killed while using the railroad track in the manner usual with pedestrians, but was lying down across the rails, in a situation calculated to conceal his presence from those operating the train, and far more dangerous than standing or walking on the track. He was also there at an un-

usual hour of the night, a time when the employes in charge of trains had a right to assume that the track was clear of pedestrians. Missouri, K. & T. Ry. Co. of Texas v. Malone, 102 Texas, 269. These facts placed Caldwell in the attitude of being prima facie guilty of such contributory negligence as would relieve the railway company of any liability for any negligence except that which may have accrued after his peril was discovered. The burden then rested upon the appellants, if they wished to base a recovery upon negligence in failing to discover him sooner, to furnish evidence sufficient to authorize the jury to acquit him of contributory negligence. The only effort to do that is in the attempt to show that Caldwell was at times subject to sudden attacks of illness which would render him helpless. Testimony was introduced to the effect that several years previous to this occasion Caldwell had become overheated, and thereafter became subject to what the witness called "spells" of some sort, and while these attacks lasted he would be helpless, would fall down, groan, and apparently suffer much pain; that they generally came on in the nighttime and would last about half an hour—sometimes not so long. His wife, who was the principal witness as to this ailment, testified that the spells seemed to follow more frequently after an overindulgence in eating. How often these spells came the testimony does not show, neither does it inform us whether or not they came periodically or at irregular intervals. Some of the sectionmen with whom Caldwell had worked for quite a while stated that they had never known him to have such an attack. Had this been the only evidence by which Caldwell's presence upon the track, apparently asleep, or in an unconscious condition, was accounted for, there might be some reason for saying that it supplied facts from which the jury could find that he was not negligently there. But there is other testimony which, if true, amply accounts for his situation. Several witnesses who saw him on the fatal night testify that he visited more than one saloon in the town of Giddings before starting for his home, and that he was considerably under the influence of liquor. Others who saw him testify that he was not drunk when they observed him, but admitted that he had been drinking some. As he started home, at about 11 o'clock at night, two of his companions accompanied him as far as the railroad depot. They both say that he was then so much under the influence of drink that he staggered as he walked. This was the last seen of him till he was discovered two hours later lying across the track in an apparently unconscious condition at the place where he was struck and killed. Under this state of the evidence we can conceive of but one reasonable conclusion that might have been reached. The jury was not left to conjecture that Caldwell might have fallen as the result of a sudden attack from one of the spells mentioned, but were confronted with a condition from which his subsequent situation was but the logical and usual sequence. The court did not err in telling the jury not to consider the fact that Caldwell might have fallen as the result of a sudden illness, and in refusing to give the special charges presenting the same issue requested by the appellants.

We have again gone carefully over the record with the view of seeing whether we were in error in concluding, as we did, that the evi-

dence did not show negligence in the trainmen in failing to sooner stop the train and prevent the accident, and have found no reason for changing our·former decision. If Caldwell was guilty of contributory negligence in being down upon the track, under the well-established rule in such cases the employes owed him no duty till after his peril was actually discovered. Without undertaking to decide when that event happened, whether it was when the indistinguishable object was discovered on the track, 300 feet in front of the engine, or when his body was recognized as that of a man only 75 or 80 feet distant, we think the inevitable consequences would have been the same. Appellants insist that there is evidence in the record which tends to raise an issue as to this fact, which should have been submitted to the jury. This evidence consists substantially of the following testimony: On the night prior to the trial four parties, Simmang, Folkes, Ebling and Krieger, repaired to that portion of the track where the accident occurred for the purpose of ascertaining by a test the distance at which a body could be discovered and distinguished upon the track of the railway. In carrying out the test, Simmang lay down upon the track at the spot where Caldwell was killed; Folkes took a position 300 feet west of Simmang on the side of the track; Krieger stationed himself at the cattle-guard, which was between seven and eight hundred feet west of Simmang, and Ebling was between Folkes and Krieger. They awaited the approach of the train, due at 12:50 that night from the west—the one whose schedule corresponded to that which killed Caldwell. Krieger stated that when the train passed him and the engine got about 40 feet distant he could see easily, by means of the headlight, about 100 yards down the track in front of the engine. Folkes stated that as the engine passed him he could plainly discern Simmang lying on the track 300 feet distant. He did not know how much farther he could have seen for the reason that he did not undertake to look beyond the point where Simmang was. Simmang testified that when the engine got about 100 or 150 feet east of the cattle-guard the first rays from the headlight fell upon him, and the engine gave several sharp whistles, which he took to be a danger signal, indicating that his presence had been discovered.· Ebling did not testify as to the results of his observation. It is further shown that the curve at that place is what is called a curve of one degree, and that is explained to be a deviation of eighteen inches from a straight line every one hundred feet. Doyle, who testified as an expert engineer, stated that the lights on that railroad were generally so adjusted that the focus fell upon the track three or four hundred feet in front of the engine, and at that point it shone from thirty to sixty feet on each side of the center of the track; that while the space between the focus and the engine was illuminated, and also a distance beyond, the focus was the place of best illumination. It will be remembered that the head brakeman testified that as soon as the headlight shone upon the body he recognized it as a human being, and not before. The question now is, Does this testimony show that the employes in charge of the train discovered the body, even as an indistinguishable object, soon enough to enable them, by the exercise of ordinary care in the use of appliances at their command, to avert the accident? Consid-

ered in its most favorable light, it shows only the possibility of an earlier discovery of the body of the deceased. Both the brakeman and the engineer testified that when they first saw the object they were not over 300 feet distant and their train was moving at the rate of eighteen or twenty miles per hour. The engineer says they were then between the 56-mile-post and the body, and by other testimony it is shown that this mile-post was about 350 feet distant from where Caldwell was struck. This would seem to corroborate the engineer's estimate of the distance. He also testified that upon being informed that he was about to run over a man, he did everything in his power to stop the train and avert the accident. The testimony shows that after striking the body the train ran 435 feet before it did stop. If we add this distance to that estimated by the engineer and brakeman as to how far they were from the body when an effort was first made to stop the train, it shows that the train could not have been stopped within less than 510 feet, or more than 200 feet in excess of the distance it was from the body when the latter was first discovered as an indistinguishable object on the track. It must also be borne in mind that this evidence was adduced by the plaintiffs, and obtained from the engineer and brakeman during their examination in chief, and that it is not contradicted except inferentially by circumstances. It is true that the plaintiffs were not legally bound by the testimony given by these witnesses, and might have produced other evidence inconsistent with the facts detailed by them; but having failed to do this, they can not complain that the version given by the engineer and brakeman was believed. The brakeman also testified that after discovering the object on the track he kept his eye upon it, and as soon as it could be recognized as the body of a man he gave the warning, and all efforts possible were then made to stop the train. After giving to every testimonial fact in the record its full probative force, we have failed to find any showing of negligence upon which a recovery could be sustained in this case. The motion is overruled.

*Affirmed.*

Writ of error refused.