MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS V. HARRY ROGERS.

Decided April 3, 1909.

**1.—Railways—Negligence—Collision—Signal to Following Train—Charge.**

Where the railway company was charged with negligence causing a collision between a train stopped between stations and a following train, resulting in injury to the engineer of the latter, in that the employees in charge of the first train failed to send back a flagman or danger signals in time to enable

the injured engineer to avoid the collision, and the court instructed the jury that it was the duty of the employees on the standing train to send back a flagman at sufficient distance to give warning or signal to the approaching train in order to prevent a collision and that if they failed and such failure was negligence which was the proximate cause of the injury, they should find for plaintiff, the defendant was entitled to a charge that if the employees in charge of the standing train did use ordinary care in said respects, the jury should find for defendant.

### 2.—Same—Violation of Rules.

As the evidence tended to show that the engineer of the standing train gave the whistle that was a signal that it would stop and to send back a flag, and that the conductor before the train stopped went back to flag the following train until he saw and signaled it to stop, a charge in effect to find for defendant if the jury believed that after the signal for a flag the conductor got a flag and alighted from his train and ran back in the direction of the plaintiff's train to as great a distance as a reasonably prudent person under the same circumstances would have gone, and that in alighting and going back such distance under the circumstances he acted as a man of ordinary prudence would have acted although he did not go back the distance required by the company's rules, announced a correct proposition of law, and the refusal to give it was error, there being no allegation that the engineer of the first train was negligent in not giving the signal for the stop sooner.

### 3.—Trial—Argument—Remarks of Counsel.

Where the defendant offered no testimony of physicians as to the injuries complained of, remarks of counsel for the plaintiff in argument, that adverse counsel had no right to complain of the lack of medical testimony because they knew that defendant had the right to demand that plaintiff be examined by physicians and surgeons and if he refused to submit himself to such examination on request the defendant had a right to require the court to appoint physicians to make it and the court would have done so and they failed to avail themselves of this privilege, were prejudicial and reversible error.

Appeal from the District Court of Hill County.  Tried below before Hon. W. C. Wear.

*Coke, Miller & Coke* and *Ramsey & Odell,* for appellant.

*Morrow & Smithdeal,* for appellee.—The special charges Nos. 14 and 18 requested by appellant in effect telling the jury that if the conductor after receiving the engineer's signal did what a reasonably prudent person would have done under the circumstances to give the appellee warning, to find for appellant, was properly refused because they ignored what the jury may have regarded as negligent conduct of the engineer in failing to give the signal or in not giving it at the proper time.

Under the facts and the rules of the appellant, it being the duty of all the employes in charge of extra 411 to see that the signal was given, it would not have been proper for the court to tell the jury that if the conductor acted in a careful manner to find for appellant. Wooters v. Hale, 83 Texas, 563; Railway v. Langford, 29 S. W., 937.

The remarks of counsel referred to in the assignment were proper, in view of the argument which had been made by counsel for appellant, complaining of lack of medical testimony and endeavoring to impress the jury with the fact that appellee was not injured. If the remarks of counsel for appellee complained of were improper they

would constitute no ground for reversal in the absence of a showing that the verdict is against the preponderance of the evidence, or that the amount of the verdict is excessive.   International & G. N. Ry. Co. v. Irvine, 64 Texas, 535; Sinclair v. Stanley, 69 Texas, 727.

BOOKHOUT, Associate Justice.—This was a suit for damages for personal injuries, filed by the appellee, in the District Court of Hill County, Texas; tried at the January term, 1908, resulting in a verdict for the appellee for the sum of fifty-five hundred dollars. Motion for a new trial, filed by appellant, was overruled on February 3, 1908, to which appellant excepted and gave notice of appeal, which was duly perfected.

It was alleged by appellee that he was injured on May 11, 1907, while acting as locomotive engineer in the employ of appellant, in charge of a freight train belonging to appellant; that said train so operated by appellee ran into and collided with another train of appellant a short distance north of Waco, and that appellee was forced to jump from his said train for his own safety and protection, and received the injury sued for herein.   It was alleged that the employes of appellant in charge of the first train were negligent in stopping said train at the place where same was stopped, and that they negligently failed to send back a flagman or danger signals and to place torpedoes on the track, as required by rules of the appellant, in time to enable appellee to avoid said collision; and that it was negligent in permitting the engine on said first train to become defective and out of repair.   In addition to a general denial, the appellant presented general and special pleas of assumed risk and contributory negligence.

On the morning of May 11, 1907, appellant's extra train No. 411, in charge of Joe Williams as conductor and Jim Brown as engineer, left Hillsboro for Waco over appellant's line of railroad.   The train consisted of twenty-three cars and a caboose, ten of the cars being loaded and twelve empty.   Five minutes after this train started from Hillsboro another train loaded with coal, consisting of twenty cars and a caboose, in charge of Conductor Hopkins and Harry Rogers, appellee, as engineer, left Hillsboro over appellant's line of railroad for Waco following extra No. 411.   Just before reaching the yard limit board in East Waco the engineer of the first train discovered that an eccentric on his engine was broken and he gave the signal that he was going to stop and to protect the rear end of the train. The evidence shows that "an 'eccentric' on an engine is that part of the engine that is made for the purpose of driving the valve motion and is in the form of a circle; on the outside of the engine it would be termed by mechanics a 'crank,' the same thing as a crank motion; in other words, to convert your reciprocating into linear motion in the line you have it to drive your valve gear.   If in the operation of a freight train a locomotive engineer should discover that his eccentric or his eccentric strap was broken he should stop his train immediately in order to avoid serious damage to other parts of the engine."

The evidence shows that before extra train No. 411 came to a full

stop the conductor got a flag and got off the train and went back to signal the approaching train. He had only time to go back four and a half telegraph poles when he came in sight of the approaching freight train in charge of appellee. He signaled it to stop. It was shown that in approaching the place of the accident the train operated by appellee was coming down grade, through a cut and around a curve at such a rate of speed that he could not and did not stop the train before it reached the forward train standing at a distance variously estimated from three to eight car lengths outside the yard limits. Appellee's train struck the standing train and pushed it forward and demolished some of its cars.

The rules of appellant governing the running of its trains applicable to the facts are as follows: Rule 98 (d): "Third class and extra trains are required to approach and pass all water tanks, coal chutes, yards and stations, completely under control. Speed must be reduced, and the enginemen and the trainmen must commence to get their train in hand in ample time so that under no circumstances whatever shall it be possible for it to strike any train, car or engine which may be occupying the track. Responsibility for safety rests with the approaching third class or extra train. This rule must not be construed as relieving enginemen and trainmen of responsibility for accidents resulting from failure to comply with rules 87, 88 and 89."

Rule 99 (a): "When a train is detained by an accident or obstructions, or stops at any unusual point, the flagman must immediately go back with danger signals, to stop any train moving in the same direction. At a point fifteen telegraph poles from the rear of his train he must place *one* torpedo on the rail on the engineman's side; he must then continue to go back at least twenty telegraph poles from the rear of his train and place two torpedoes on the rail on the engineman's side, ninety feet (three rail lengths) apart, when he may return to a point fifteen telegraph poles from the rear of his train, where he must remain until an approaching train has been stopped or he is recalled by the whistle of his engine. When he comes in he will remove the torpedoes nearest his train, but the *two* torpedoes must be left on the rail as a caution signal to any following train. Should the flagman be recalled before reaching the required distance he will place two torpedoes on the rail on the engineman's side, ninety feet (three rails length) apart and immediately return to his train, unless a train is in sight or hearing. If from any cause the speed of the train is reduced, the conductor will be held responsible for fully protecting the rear of the train by the use of proper signals. If the accident or obstruction occurs upon single track, and it becomes necessary to protect the front of the train, or if any other track is obstructed, the head brakeman must go forward and use the same precautions. If the head brakeman is unable to go, the fireman must be sent in his place."

Rule 99 (b): "When on a curve or down grade the flagman must go back a distance of at least twenty telegraph poles farther than as above provided, and as many more as may be necessary, before placing torpedoes, to give approaching trains ample time to stop."

Rule 99 (d): "When it is necessary for a train to stop between

stations for any cause it will, if practicable, be stopped at a place where the view in the rear of the train is clear for at least half a mile, but not at the foot of a grade, and the train must be protected as per rule 99-a and rule 99-b."

There was evidence that rule 99 (d) would not apply when an engine stopped on account of a broken eccentric strap, because in such case it is necessary to bring the train to a stop as soon as practicable to avoid further damage to the engine. There was also evidence that rule 98 (d) is not given a literal construction, but that what is understood by having a train under control is governed by location and conditions.

Appellant assigns as error the court's failure to give its requested charge No. 14 as follows: "If you should believe from the evidence that after the engineer Brown, on extra train No. 411, gave the signal for a flag, the conductor on said train got a flag and alighted from said train before it stopped and ran back the track in the direction in which plaintiff's train was moving, to as great a distance as a reasonably prudent person under the same or similar circumstances would have gone, and that in alighting from said train and going back said distance under the circumstances the said conductor acted as a man of ordinary care would have acted under the same or similar circumstances, then you are instructed to find for the defendant, even though you should believe from the evidence that the said conductor did not go back the distance required by defendant's rules, or place torpedoes on defendant's track as required by said rules."

Joe Williams, the conductor of extra train No. 411, testified in substance that the engineer on his train gave a signal that he was going to stop, which meant to protect the rear end of the train by flag; that at the time the signal was given he was in the caboose and the rear brakeman was on top of the train; that it is the rear brakeman's duty to flag, and the conductor's duty to do it if the brakeman is not there; that when the signal was given he got the flag and got down off the train before it had come to a full stop and went back to flag appellee's train; that he ran back as far as he could, which was four and one-half telegraph poles, when he came in sight of the approaching train and signaled it to stop, which signal the appellee answered by two blasts of the whistle. The court having instructed the jury that it was the duty of the employes in charge of such standing train to send back a flagman a sufficient distance to give warning or signal to the approaching train in order to prevent a collision, and that if they failed to send back a flagman in time to signal the approaching train and that such failure was negligence, which was the proximate cause of appellee's injuries, they should find for the appellee, the appellant was entitled to have the jury instructed that if the employes in charge of such standing train did use ordinary care in said respects, they should find for the appellant. The requested charge sought to have this issue specially submitted to the jury, which, under the evidence, it was entitled to have done. The charge requested announced a correct proposition of law and should have been given. The court's failure to do so was error.

Error is assigned to the remarks of one of the counsel for plaintiff made to the jury in his closing argument as follows: "Gentlemen of the jury: Counsel for defendant have no right to complain of the lack of medical testimony because they know that the defendant had a right to demand that plaintiff be examined by competent physicians and surgeons, and that if he refused to submit himself to such an examination at defendant's request, it then had a right to require the court to appoint physicians and surgeons to make such examination, and the court would have appointed physicians to examine him, and they knew it, and they failed to avail themselves of that privilege and that is the reason why they are without medical testimony in this case." These remarks were not authorized by the record. The appellant did not have the right to require the court to appoint physicians and surgeons to make an examination of the injuries of plaintiff, and compel plaintiff to submit to such examination. (Austin & N. W. Ry. Co. v. Cluck, 73 S. W., 569; Galveston, H. & S. A. Ry. Co. v. Sherwood, 67 S. W., 776.) The nature and probable effect of the action of the court in overruling the objection to these remarks was to lead the jury to believe that the statement of appellee's counsel was correct and that the appellant did have the right to demand that plaintiff be examined by competent physicians and surgeons and to require the court to appoint such physicians to make such examination. The remarks were therefore highly prejudicial to the appellant. The nature and extent of plaintiff's injuries were seriously controverted issues, and plaintiff not having offered the testimony of a physician or surgeon in regard to his condition, we regard the remarks of counsel prejudicial and reversible error. (Missouri, K. & T. Ry. Co. v. Walden, 46 S. W., 87; Chicago, R. I. & T. Ry. Co. v. Langston, 92 Texas, 713.)

For the errors pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*

### OPINION ON REHEARING.

Appellee in his motion for rehearing strenuously contends that appellant's requested charge No. 14, for the refusal of which the judgment was reversed, does not announce a correct proposition of law and therefore we erred in reversing the cause. It is insisted that this charge ignores (1) the issue as to whether the engineer on extra train 411 was negligent in failing to sound the whistle in ample time to permit the trainmen to protect the following train; (2) the issue as to whether the rear brakeman on extra train 411 used ordinary care to go back and give appellee the signal to stop his train; (3) the issue of negligence on the part of the engineer of extra train 411 in reducing the speed of his train and failing to warn appellee thereof.

There was no allegation in appellee's petition that the engineer in charge of extra train 411 was negligent in failing to give the signal of his intention to stop his train sooner than it was. The uncontradicted evidence shows that the conductor in charge of appellant's

extra train 411 did all in his power to protect the rear of his train as required by the rules. He got the flag and got down off the train before it stopped and ran back as far as he could before he saw appellee's train. He at once gave appellee the back-up signal. At the time the rear brakeman was on top of the train in the discharge of his duties. The evidence of the conductor of extra train 411 was that his train had not slackened its speed. This evidence is not contradicted. The court could assume and determine these matters under the uncontradicted evidence.

The opinion states that "the nature and extent of plaintiff's injuries were seriously controverted issues, and plaintiff not having offered testimony of a physician or surgeon," etc. There is a clerical error in this sentence in using the word "plaintiff" for defendant. The plaintiff did offer the testimony of a physician of the nature and extent of his injuries, but defendant did not offer the testimony of physicians to show the nature and extent of the same. In this respect the opinion is corrected. The motion for rehearing is overruled.

*Overruled.*