### GALVESTON, H. & S. A. RY. CO. v. HUEGLE.

(Court of Civil Appeals of Texas. San Antonio. May 28, 1913. Rehearing Denied June 25, 1913.)

1. RAILROADS (§ 369*)—INJURIES ON TRACK—INJURIES TO TRESPASSERS.

The fact that one injured on a railroad track was a trespasser did not relieve train employés of the duty of keeping a lookout or justify them in running over such trespassers without endeavoring to discover them on the track.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1259–1262; Dec. Dig. § 369.*]

2. RAILROADS (§ 370*)—INJURIES ON TRACK—DUTY TO GIVE SIGNALS.

It was a duty of trainmen to give the statutory signals by bell and whistle at a point on the right of way which was customarily

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

used by pedestrians as a footpath or crossing to the company's knowledge.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1263–1265; Dec. Dig. § 370.*]

3. RAILROADS (§ 390*)—INJURIES ON TRACK—CONTRIBUTORY NEGLIGENCE — DISCOVERED PERIL.

If one who negligently went on a right of way was discovered by train employés in a place of danger in time to have stopped the train and avoided his injury, the company would be liable for his failure to do so, notwithstanding the injured person's contributory negligence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1324, 1325; Dec. Dig. § 390.*]

4. RAILROADS (§ 370*)—INJURIES ON TRACK—CARE REQUIRED.

Train employés on a train passing through a town at a rapid rate of speed about 8 o'clock in the evening at a place habitually used by pedestrians are required to keep a reasonable lookout for pedestrians at such place.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1263–1265; Dec. Dig. § 370.*]

5. RAILROADS (§ 370*)—INJURIES ON TRACK—DUTY OF COMPANY—KEEPING LOOKOUT.

While ordinarily railroad companies may rely upon having a clear track, except at public crossings, etc., they must keep a lookout to prevent injury to any one who may be on the track.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1263–1265; Dec. Dig. § 370.*]

6. RAILROADS (§ 400*)—INJURIES ON TRACK—JURY QUESTION—DISCOVERED PERIL.

Evidence in an action against a railway company for injuries by being struck by a train while at a place on the right of way habitually used by pedestrians *held* to make it a jury question whether the trainmen discovered plaintiff's peril in time to have stopped the train before striking him.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1365–1381; Dec. Dig. § 400.*]

Appeal from District Court, Medina County; R. H. Burney, Judge.

Action by Frank Huegle against the Galveston, Harrisburg & San Antonio Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, De Montel & Fly, and V. H. Blocker, all of Hondo, and W. B. Teagarden, of San Antonio, for appellant. L. J. Brucks, of Hondo, D. A. McAskill, Perry J. Lewis, and H. C. Carter, all of San Antonio, for appellee.

FLY, C. J. Appellee instituted this suit to recover damages which he alleged accrued through injuries negligently inflicted on his person by appellant. Appellant answered by general denial and special plea of contributory negligence on the part of appellee. A trial by jury resulted in a verdict and judgment for appellee in the sum of $9,000.

The facts show that while appellee was walking in a path near the main line of appellant in the town of D'Hanis, which was habitually used by pedestrians, he was struck by a west-bound train, and knocked down and seriously injured; that he fell on a side track, also near the much-used path, and while lying there in an unconscious condition he was run over by an east-bound train, and one of his feet so injured that it had to be amputated. The two accidents occurred through the negligence of the crew of each train, either in failing to keep an outlook and give signals while running through the town, the west-bound at a high rate of speed, or in failing to use any means at hand to prevent injuring appellee after he had been discovered near the track. One or two things is absolutely true in connection with the accidents—either no watch whatever was kept on the tracks and paths near by while the trains were passing through the town, or appellee was seen first near the track, in a place of danger, by the employés on the west-bound train, and no warning of the approach of the train was given and no effort made to stop it and was then seen on the side track by the employés on the east-bound train, and no effort made to stop the train or warn appellee of its approach. The engineer on the west-bound train stated that he ran through D'Hanis at the rate of 20 or 25 miles an hour, that he was looking ahead, and, if a man had been walking between the main and side tracks, he would have seen him when he was 600 or 700 feet distant. There was evidence tending to show that there was no headlight on the west-bound engine. The west-bound train passed through D'Hanis between 8 and 8:30 o'clock, and appellee was injured about that time. No trains passed through D'Hanis between 8 and 10:15 o'clock p. m. except the one going west and the other east. The east-bound train passed through D'Hanis at 10:15 p. m. The engine and caboose going west could have been stopped in a distance of 100 feet or less. The east-bound train was moving at the rate of four or five miles an hour when it ran over appellee. The engineer swore that there was no obstruction that would have prevented him from seeing appellee lying on the track, but swore he did not see him, and yet he was run over and hurt. After appellee was injured, the train was stopped and the employés went to him.

[1] The evidence failed to show contributory negligence on the part of appellee, but, if it had, all the facts tend to show that appellant's employés knew, or should have known, the peril of appellee. As said by this court in Railway v. Broomhead, 140 S. W. 820: "If it be true, however, that deceased was a trespasser upon the track of appellant, that fact did not relieve appellant of the duty of keeping a lookout on its track, and give license to its employés to shut their eyes to objects on the track and to run down and kill human beings thereon, and obtain immunity from such acts by the plea that they had no right to be on the track. * * * The fact that a person may without authori-

ty enter upon a railroad track does not relieve railroad companies of the duty devolving on them in the operation of their dangerous agencies of being watchful for men or beasts upon the tracks, but they will be held to owe the duty at all times when a train is in motion, at all points along their highways, to keep a reasonable outlook, and to exercise reasonable care to prevent injury to any one on the track." Broomhead was walking in a path near the track, which was habitually used by pedestrians, with his back towards the train that struck him. That path was not in or near a town. The employés could have seen Broomhead, but swore they did not see him. No signals were given, and the train was running at a high rate of speed. The facts in this case are more potent than in the Broomhead Case. Appellee herein was in a path habitually used by pedestrians in the town of D'Hanis, no signals were given, and the train was running at a high rate of speed. The first, second, and third assignments of error, which attack the sufficiency of the evidence to show negligence on the part of appellant, are overruled. Railway v. Watkins, 88 Tex. 20, 29 S. W. 232.

It is the contention of appellant that the court erred in submitting as an issue of negligence the failure of appellant to ring the bell or blow the whistle or to have its headlight burning within eighty rods of a road crossing, if appellee was struck within that distance of a public crossing. The court did not declare that it was negligence to fail to do the things enumerated, but left it to the jury to determine whether or not it was negligence. Appellant in his fourth assignment of error claims that the charge was erroneous, "because these were not any of the legal duties due to plaintiff under the circumstances of this case, and could not be looked to for any other purpose, except to pass upon the conduct of plaintiff only." The court did not state that it was a duty owed by appellant to appellee to blow the whistle, ring the bell, and keep the headlight burning, but merely submitted it to the jury to say whether it was negligence for a railroad train to run through a town with no lights and without giving any signal of its approach. It is provided by statute that every locomotive engine be equipped with headlights of not less than 1,500 candle power, measured without the aid of a reflector, but, if the Legislature had not provided for the headlight or the ringing of the bell or sounding of the whistle, the jury might have found that it was negligence under the facts of this case to fail to give notice of the approach of a train at night by light, whistle, or bell. Speaking of the statutory signals, the Supreme Court, in the case of Railway v. Saunders, 101 Tex. 255, 106 S. W. 321, 14 L. R. A. (N. S.) 998, 16 Ann. Cas. 1107, held: "These signals are required because of the

nature of the place, a crossing of the railroad by a road or street which others have the right to occupy and use with their persons and property. The deduction seems plain that the protection is given to those who are exercising their right with respect to the road or street. The requirement is not adapted to the protection of others, the warning being required only at a certain distance from the highway and until it has been passed." The court quotes with approbation the case of Railway v. Gray, 65 Tex. 32, and says: "The doctrine laid down by Chief Justice Willie in Railway v. Gray admits allegation and proof of the failure to give such signals as a fact to be considered by the jury in determining whether or not under the facts of a particular case there was, in fact, negligence on the part of a railway company in the conduct of its business; and, in order to explain the bearing of such evidence, the court may inform the jury of the statutory provision, provided it leaves to them the decision, from all the evidence, of the ultimate question of negligence vel non." In the Gray Case, approved in the Saunders Case, it was held: "Whilst the statutory signals to be given at road crossings are intended as warnings to persons upon the road or near the crossing, the failure to give them may be taken into consideration, together with other facts, to show want of reasonable care on the part of the company as to other parties lawfully upon the railway. * * * In the one case the omission of the signals is negligence per se, and may be so declared by the court; in the other it may or may not be negligence under the circumstances, and the jury must pass upon the question." In this case, coupled with the failure to give signals, was a failure to have a headlight, a statutory duty, and appellee when struck was in a pathway habitually used by the public in a town at a place within eighty rods of a public crossing. The issue was raised by the evidence as to negligence in regard to the light and the signals, and it was not error to present it to the jury.

[2] The fifth assignment of error complains of a certain part of the charge of the court which, it is stated, instructed the jury that it was the duty of appellant to give the statutory signals and have the engine lighted at time of accident, and then complains because the court did not so charge, but left it to the jury to determine. The charge of the court did not submit the question of the duty to give statutory signals or to light the engine to the jury, but submitted the question as to whether it was negligence to fail to do those things. The charge was not erroneous in any particular or injurious to appellant, and it would have been error to have instructed the jury that it was a duty of the appellant to appellee to give the signals by bell and whistle under the facts of this case.

[3] If appellee was guilty of negligence

by going on or near the track of appellant, and was by such negligence in a place of danger and peril, but was discovered by the employés of appellant in his place of peril in time to have stopped the train and prevented the accident, appellant would be liable, in spite of the contributory negligence of appellee. That is in effect what the court gave in charge to the jury in the fourth paragraph of the general instructions, and that forms the subject of complaint in the sixth assignment of error. Discovered peril in time to prevent an accident by the reasonable use of the means at hand blots out and destroys the effects of contributory negligence. The evidence shows that the peril of appellee must have been discovered by the employés of appellant. Railway v. Wallis, 47 Tex. Civ. App. 120, 104 S. W. 418; Railway v. Rogers, 55 Tex. Civ. App. 93, 117 S. W. 939; Railway v. Staggs, 90 Tex. 458, 39 S. W. 295. The rule is recognized and applied to the facts by appellant in a special charge requested by it and given by the court. By that special charge the effect of the contributory negligence of appellee is destroyed by proof of the timely discovery of his peril on the part of the employés of appellant. If the charge of the court had been erroneous, under the facts, appellant has placed itself in such a position that it cannot complain.

The charge complained of in the seventh assignment of error as imposing a higher degree of care upon appellant in keeping a lookout along its track than authorized by law we do not think open to the attack made upon it. No higher degree of care is demanded by the charge than a "reasonable lookout for pedestrians at said time and place."

[4] It surely cannot be maintained that the employés on a train passing through a town about 8 o'clock in the evening, at a place habitually used by pedestrians and at a rapid rate of speed, are not required to keep a "reasonable lookout for pedestrians at said time and place." Even under the narrow and restricted rule enunciated by the Supreme Court in Railway v. Malone, 102 Tex. 269, 115 S. W. 1158, which holds that no duty arises to keep watch by night in passing a bridge which was habitually used by pedestrians during the day, but was used by only a few persons at night, the charge was not erroneous. The rule announced in Railway v. Sympkins, 54 Tex. 615, 38 Am. Rep. 632, and Railway v. Hewitt, 67 Tex. 473, 3 S. W. 705, 60 Am. Rep. 32, and followed in a number of recent cases by the Courts of Civil Appeals and approved by the Supreme Court, by the refusal of writs, is the more salutary rule. Railway v. Burnett, 49 Tex. Civ. App. 244, 108 S. W. 404; Railway v. Williams, 50 Tex. Civ. App. 134, 109 S. W. 1126; Railway v. Poteet, 53 Tex. Civ. App. 44, 115 S. W. 883; Railway v. Broomhead, 140 S. W. 820; Higginbotham v. Railway, 155 S. W. 1025.

[5] The rule, we think, is well stated by Judge Stayton in the cited case of Railway v. Hewitt: "Ordinary railway companies, running cars propelled by steam, have the exclusive right to the use of their tracks, except at such places as they are intersected by public crossings or such private ways as they may permit, and they may therefore expect that no one will violate this right, and may rely upon a clear track, but it is very generally held that notwithstanding this, such is the hazardous nature of the business in which they are engaged, it is the duty of such carriers, not only for the safety of their passengers, but for the safety of any one who may be on the track, to keep a lookout."

[6] It is rarely the case that direct and positive evidence of a discovery of a person on the track by the employés can be obtained and necessarily circumstantial evidence must be relied upon to prove the issue. In this case appellee swore that he was walking in a path near the main line of the railway, and that he was struck by a passing train; the employés on the west-bound train swore that they had a strong headlight capable of revealing the presence of a person in the path a long distance off, and that they were keeping watch along the track. The jury could reasonably conclude, in spite of their statements to the contrary, that they saw appellee at such distance that they could have warned him or have stopped the train in time to have prevented disaster. The evidence of the employés on the east-bound train was to the same effect. The court did not err in presenting the issue of discovered peril to the jury, and the eighth assignment of error is overruled.

The ninth assignment of error presents matters herein considered adversely to appellant, and is overruled. Nothing is assumed in the charge, but every question was clearly and impartially submitted to the jury, and the tenth and eleventh assignments of error are overruled.

The court submitted nothing but questions of fact for the consideration of the jury, and the twelfth assignment of error is overruled.

There is no error requiring a reversal, and the judgment is affirmed.