## TEXAS & N. O. R. CO. v. SPENCER et al. (No. 791.)

(Court of Civil Appeals of Texas. Beaumont. Oct. 28, 1922. Rehearing Denied Nov. 15, 1922.)

1. Trial ⚖➡192—Instruction could assume defendant's train caused injury, where boy was found cut and bruised beside tracks.

Where an eight year old boy was found cut and bruised beside the tracks and the parties agreed defendant's train was the only one which could have caused his injuries, *held*, on the undisputed evidence, the instructions could assume defendant's train caused boy's injuries.

2. Evidence ⚖➡194—Boy's clothes worn during alleged accident could be introduced to show injuries were caused by train running over him.

Where a boy was found cut and bruised beside the tracks, his clothes then worn could be introduced as material evidence to show train ran upon him and caused the injuries.

3. Damages ⚖➡208(4)—Minor's continued indisposition after accident affords ground for submitting diminished earning capacity after reaching 21 years.

Though injured minor's wounds were stated by a physician to be healed after railroad accident, diminished earning capacity after reach-

ing 21 years could be submitted as element of recovery, where there was suffering from continued lameness, nervous spells, and an eruptive scar.

**4. Railroads ⊕⇒369(3)—Lookout for trespassers required.**

A railroad company is at all times bound to exercise ordinary care to discover persons who may be on its track though they are trespassers.

**5. Trial ⊕⇒350(2)—Issue covering evidentiary matter improper.**

A special issue covering only evidentiary matter is properly refused.

**6. Railroads ⊕⇒398(2) — Want of lookout shown.**

Where the track was straight for about 1,200 yards with nothing to obstruct the view of an eight year old boy, though he was lying down when struck at night, the inference was warranted that operatives failed to keep proper lookout.

**7. Railroads ⊕⇒400(11)—Contributory negligence of child held for jury.**

Whether an eight year old boy below normal mentality, injured by a train at night, had capacity to appreciate the danger to which he exposed himself, in walking, lying, or sleeping on the track, *held* a question for the jury.

**8. Negligence ⊕⇒134(2) — Proximate cause shown by circumstances.**

Proximate cause of an injury may be shown by circumstances.

**9. Railroads ⊕⇒398(2)—Finding want of lookout caused injury to boy on track authorized.**

Evidence as to a boy's injuries by a train at night *held* to authorize the jury to find that the accident could have been avoided by the exercise of due care in keeping a lookout for him.

**10. Damages ⊕⇒191 — Evidence must show medical charges were reasonable.**

A father suing for minor son's injuries cannot recover for medical services, where he fails to show that the charges were reasonable.

Appeal from District Court, Nacogdoches County; L. D. Guinn, Judge.

Action by J. E. Spencer, for himself and as next friend for his minor son, Vestal Spencer, against the Texas & New Orleans Railroad Company, a corporation. Judgment for plaintiffs, and defendant appeals. Judgment for Vestal Spencer affirmed, and judgment for J. E. Spencer affirmed on condition that he enter remittitur; otherwise to be reversed and his cause remanded for new trial.

Garrison, Pollard & Berry and Baker, Botts, Parker & Garwood, all of Houston, and Russell & Seale, of Nacogdoches, for appellant.

S. M. Adams, of Nacogdoches, for appellees.

WALKER, J. We take the following statement of the nature and result of this suit from appellant's brief:

"This is a suit brought by appellees, J. E. Spencer, for himself and as next friend for his minor son, Vestal Spencer, against the appellant, Texas & New Orleans Railroad Company, for damages for personal injuries alleged to have been received by the said Vestal Spencer on or about the 23d day of March, A. D. 1921, appellees alleging that the said Vestal Spencer, being at and near a flag station called Hoya on appellant's line of railroad, 4 miles southeast from the city of Nacogdoches, Tex., undertook to walk from the said flag station, Hoya, to the city of Nacogdoches following the line of the defendant's railroad track, and had proceeded to a point some 300 yards east of Hoya when he was run over and injured by a train going towards the city of Beaumont over said appellant's railroad. Appellees further alleged that the said Vestal Spencer, at the time of his injury, was a child of immature years and discretion, being 8 years of age, and without sufficient judgment and appreciation to understand and comprehend the danger to which he subjected himself in walking on the appellant's railroad track, and that the place where he was walking was commonly used by pedestrians as a walk or pathway going to and from the town of Nacogdoches. Appellees further alleged that by reason of the fact that Vestal Spencer was run over and struck by appellant's train, he sustained injuries which caused his body to be bruised and mangled, etc., setting out in great particularity and detail the various injuries received by him on said occasion.

"It is agreed between the appellant and appellees that a freight train left Nacogdoches somewhere about 2 or 3 o'clock on the morning of March 23, 1921, going towards Beaumont, and passed Hoya's switch about 3 o'clock a. m., or thereabouts, and that this was the only train that passed where the boy was found injured. It was further agreed that this was the only train to pass after the boy was seen going towards Beaumont, and the undisputed evidence shows that the last time the boy was seen before he was found in an injured condition was about 9 o'clock at night, or some six hours before the train passed him that was alleged to have injured him.

"The appellant answered by general demurrer and general denial.

"The case was submitted to the jury on special issues, and on the verdict returned by the jury on said special issues, judgment for appellee J. E. Spencer for $100, and judgment for appellee Vestal Spencer for $1,000, was entered; said judgments bearing 6 per cent. interest from the 15th day of September, A. D. 1921."

Appellee has filed no brief.

The facts of the case will be further disclosed in our discussion of appellant's propositions.

[1] 1. The court did not err in assuming in his charge—if it is subject to that construction—that plaintiff was injured by one of appellant's trains, though that issue was

---

submitted to the jury. On that issue the record discloses the following facts without controversy, to wit:

John Moore, who was the first one to see Vestal after his injury, thus describes the condition and position of his body:

"I was in the middle of the track and saw a little boy on the end of the ties, right at them, His head was pointing west. I think it was west; that would be on the right-hand side going. His head was pointing back towards Nacogdoches. He was facing west. His head was pointing this way (west), and his feet that way. He was on the switch, just below the last trestle, when I saw him, next to the lower end, between the switch and the main line, on the switch. He was not lying between the switch and the main line. He was on the west of the switch on the right; left coming down. The switch was on both sides of the bridge, this side and the other side. He was not on the outside of the switch; he was on the side next to the wire, on the west side."

Henry Hoya testified as to the evidence on the ground as follows:

"I have been to Hoya's switch. I went down there when the report was put out that Vestal Spencer was down there. I was not there before he was moved. It was two or three hours after he was moved before I got there. I had some one carry me to the place where he was found; that place could be identified by a spot of blood on the ground.

"As to the evidence I saw on the ground, we went up the railroad track about two rail lengths west toward Nacogdoches, and found blood on the track, and the track looked like something had been drug over it and part of the oil knocked off of the ground, and then we went to where they showed us the boy was picked up and the man that found him showed us the place. It was about two rail lengths back from where he was found up the track. The first spot of blood was west of, or between, where the boy was found lying and the city of Nacogdoches, and the next was towards Hoya's switch where he was picked up. I went with you (Mr. Adams) after hearing of the accident, and the examination of the ground was made by us. Mr. John Spencer walked west from the place where the boy was found. * * *

"When I went down there the first time, Mrs. Spencer and some men from Shelby county and somebody else, I don't know their names, were with me. Will Stivers showed me where the boy was supposed to have been picked up. He was there with me when I saw this place scraped up and down the road and saw the blood further up. From this place it was about two rail lengths to where the second blood was found, on the left going toward Nacogdoches, and on the right-hand side, going down. I don't know whether it was on the ground or on the ties, or in the middle of the track. The blood nearest Nacogdoches was in the middle of the track, but not on the side, between the railings. I saw four or five drops of blood. The passenger train came while we were there; at that time, it was 12:45 in the daytime. I saw four or five drops of blood in the middle of the track. The oil had

been cracked up, and it looked like something had been drug over it; it showed the oil had been scraped. That was right to the right of the center of the track, but between the rails. The place where I saw where something had been drug was between the rails, and the other blood was down two rail lengths, to the left; that was where he fell; that was towards Hoya's switch, to the left towards Beaumont. Well, he was on the left toward Beaumont. I didn't go to the switch. I don't think the track was straight there. I think there is a bend there, but I could not say positively; but I know the train stopped at Hoya's switch that day, and it was above me. I did not walk back 1,200 feet; Mr. Adams did. He told me how many feet it was, and when I am talking about the distance, I am merely repeating what he told me. The child was with us then, and he put his hand up and laid the child down, and I could see his hand, and he was back this way 1,200 yards. I never stepped it. I did not go to where he was; I stayed there."

Dr. Nelson, who attended Vestal, described his physical condition and injuries as follows:

"I was called upon to treat Vestal Spencer on the morning of March 23d, this year, early in the morning.

"I saw him at the hospital, where I was called to see him. He was in a state of shock and looked more dead than alive, practically pulseless and one mass of blood and dirt all over. We had to clean him up before we could tell who he was, or how badly hurt he was. He had a severe cut through his forehead, about 3 inches long, and another on the right side of the head and then his body and legs, almost from head to foot, was a mass of bruises, and he was skinned all over, practically. I treated him after he left the hospital. My recollection is that I was at the hospital three or four days and saw him a week or so after he left, and then had to be back again. My experience as a physician covers 25 years.

"His back was severely skinned and bruised. The skin was off in a great many places. These abrasions, a good many of them, looked like the skin had been scoured off. Those places on his forehead and head were lacerations and made by a blunt instrument.

"Mr. Spencer got his bill from me. I was called to treat one of the places on his head some weeks afterwards.

"Those wounds I found on the head had been inflicted by the boy falling. The wound I found on the back of his head could have been inflicted if he had struck his head on the end of a tie, if he fell with enough force. I don't know about if the boy had been out in the nighttime he might have gotten in various positions and various things that would have brought about those scratches could have occurred; from the number of scratches, not many things could have done it. I wouldn't say that it looked like he had been run over by a locomotive. I don't know whether it would have left a scratch, if an engine had run over him; the wheels certainly did not run over him. I don't know whether the condition I found him in could have been inflicted by a train; the running over might have done that. I expect if a train was passing along and he tried to

catch a car, he could have been jerked down and the wounds inflicted; I don't know."

The clothes he had on when found after his injury were covered with oil and had gravel and rock in them similar to the gravel and rock on appellant's track, at the place of injury. The testimony given by these witnesses was not denied nor controverted by any one, though some of the other witnesses testified they did not see the blood on the track nor the place on the track which indicated that something had been dragged over it.

From the foregoing statement, we think it conclusively appears that plaintiff was injured by appellant, as no other inferences could properly arise on these facts.

[2] 2. The court did not err in permitting plaintiffs to introduce in evidence the clothes which Vestal had on when he was injured. We think the statement above made conclusively shows that this was material evidence as to how the injury was inflicted.

[3] 3. The court submitted to the jury, as an element of recovery, Vestal's "diminished capacity to labor and earn money" after he reached the age of 21 years. It is true that Dr. Nelson testified:

"I think the wounds the boy had are well. I haven't seen him in a long time. The wounds are well and the scratches got all right. The bruises are well and he got all right,"

and that he was the only physician who did testify; but on this issue Vestal's mother testified as follows:

"Since getting out of the sanitarium, he seems to be worse at times than at others; the nervous spells come and go. The lameness seems more in his back than in his leg. * * * "The scar left on his forehead runs from his nose to his hair and every now and then, every three weeks or a month, it puffs up and has to be opened; it left a bad scar, about three inches long and 1½ inches wide; it is just a little scar. Since the accident happened, as to the difference in his mental condition, will say that he takes spells now."

Her testimony brings the case within the rule announced in Railway Co. v. Hawkins, 49 Tex. Civ. App. 545, 108 S. W. 736, where the court said:

"We think the evidence should show that there is a reasonable probability of the occurrence of future ill effects of the injury, and that it need show no more, in order to justify the jury in considering future consequences in estimating damages."

[4] 4. The court did not err in charging the jury that the operatives of the train were under the duty of keeping a lookout for such persons as might be on the track. The evidence showed that the track at the place of the accident had been used by pedestrains for many years, and that many people constantly used it in the daytime. The testi-

mony was very meager as to this use at night by pedestrains, and there was no evidence that any one of the officials of appellant knew of such use at night, or by the use of ordinary care could have discovered it. Appellant relies on Railway Co. v. Malone, 102 Tex. 269, 115 S. W. 1158, Massey v. Railway Co. (Tex. Civ. App.) 162 S. W. 371, and Caldwell v. Railway Co., 54 Tex. Civ. App. 399, 117 S. W. 491, as announcing the correct rule applicable to the facts of this case; but, as we understand the later decisions of our courts, these cases are not followed, and are now not the law of this state. By refusing a writ of error, the Supreme Court approved the following statement of the law on this question, made by the Amarillo Court of Civil Appeals in Railway Co. v. Haywood, 227 S. W. 347:

"The appellants further insist that the defendants owed no duty to keep a lookout for trespassers, and there could be no negligence in the failure to do this, the only liability being from injuries resulting from its negligence in failing to exercise ordinary care to avoid injury after actual discovery of the presence of the trespasser on the track. This is the law in some jurisdictions, but not in this state. It is settled by the decision of our courts that the railroad company is at all times bound to exercise ordinary care to discover persons who may be on its track, whether or not they are trespassers, and is responsible for injuries resulting from negligence in the performance of this duty, unless recovery is defeated by the contributory negligence of the trespasser."

See, also, Railway Co. v. Hammer, 34 Tex. Civ. App. 354, 78 S. W. 708; Railway Co. v. Watkins, 88 Tex. 24, 29 S. W. 232; Railway Co. v. Huegle (Tex. Civ. App.) 158 S. W. 197; Railway Co. v. Broomhead (Tex. Civ. App.) 140 S. W. 820.

[5] 5. If we have reached the correct conclusion in the fourth proposition, supra, the court did not err in refusing to submit to the jury, at appellant's request, the following special issue:

"Was the track of the defendant company, at the place where Vestal Spencer was found, commonly used by pedestrians, with the knowledge of the defendant company and its employees, in the nighttime, about 3 o'clock a. m."

This was only an evidentiary matter, and the answer of the jury to the issue would not have aided the court in rendering its judgment.

[6] 6. The evidence raises the issue that the operatives of the train were negligent in failing to keep a proper lookout for persons on the track. The parties to this suit made the following agreement:

"It is agreed between the parties that a freight train left Nacogdoches somewhere about 2 or 3 o'clock on the morning of March 23d, going towards Beaumont, and passed Hoya's switch at 3 a. m. or thereabouts; that this was the only train that passed until the

boy was found. It is further agreed that that was the only train that passed after the boy was seen going toward Beaumont."

The track was straight for about 1,200 yards west of the place of the accident. There was nothing to obstruct the view of the operatives of one on the track, whether he was standing up or lying down. The evidence showed that had Vestal been lying down the operatives could have seen him, in the exercise of ordinary care, in time to have stopped the train, and thus avoided injuring him. These facts warrant the inference that the operatives failed to keep a proper lookout. Railway Co. v. Douthit (Tex. Civ. App.) 208 S. W. 201; Railway Co. v. Wallace (Tex. Civ. App.) 200 S. W. 178; Railway Co. v. Huegle, supra.

[7] 7. Vestal was not guilty of contributory negligence as a matter of law in being on the track at the time and place where he was injured, whether he was walking, standing, lying down, or asleep. At the time of his injury he was only eight years old. As to his mentality, Dr. Nelson testified:

"I have known this boy about three or four years, I reckon, as well as I can remember. As to his condition with reference to being normal, and what it has been, I would consider him below normal; his mental condition is what I mean. I would not term him a bright child in all respects."

Judge Street, in Personal Injuries in Texas (2d Ed.) p. 91, says:

"The same rule that applies to persons in general, who from their age may be assumed to have the necessary discretion to protect themselves by refraining from the acts or omissions that will contribute to their injury, cannot be applied to infants whose immaturity, age, lack of judgment and discretion render them incapable of self-protection, and, as to them, the negligence of another inflicting the injury will fix liability, though the act or omission of such a child, if by an adult or by a child possessing the requisite discretion, would defeat a recovery. It is not the fact of the child's minority that disentitles one who has negligently injured him from claiming exemption from liability in such case, but of his immaturity of judgment and lack of the power or capacity to appreciate the danger to which he exposes himself."

Whether Vestal had "the power or capacity to appreciate the danger to which he exposed himself," was a question for the jury. Railway Co. v. Rodriguez (Tex. Civ. App.) 133 S. W. 690; Railway Co. v. Poteet, 53 Tex. Civ. App. 44, 115 S. W. 883; Railway Co. v. Bolton, 36 Tex. Civ. App. 87, 81 S. W. 123.

[8, 9] 8. Appellant invokes Railway Co. v. Shoemaker, 98 Tex. 451, 84 S. W. 1049, as authority for the proposition that the facts of this case do not raise the issue that its negligence, if any, was the proximate cause of Vestal's injuries. Of course, the facts necessary to raise the issue of proximate cause must be proven; but, like other issues, it may be shown by circumstances. Appellant's right of way was fenced at the place of injury. There is nothing in the record to suggest that Vestal walked on the track immediately in front of the engine. There was nothing near the track to obscure his approach. The facts show, unmistakably, that he was in the center of the track, between the rails, when he was struck. An inference arises that he was lying down, because if he had been standing up it is not conceivable that he could have been knocked down in such manner as to permit the train to run over him without killing him or maiming him for life. In view of all the facts detailed by us above, we believe the jury were authorized to find that Vestal was on the track as the train approached him, and, had the operatives of the train exercised the proper degree of care in keeping a lookout for him, that the accident could have been avoided.

[10] 9. The father of Vestal, on his own behalf, offered evidence that he had paid for medicine, doctor bills, and hospital fees, in the sum of $43.80, but failed to show that the charges for these items were reasonable. This omission was fatal to his recovery. Railway Co. v. Harrison (Tex. Civ. App.) 77 S. W. 1036; Wheeler v. Railway Co., 91 Tex. 356, 43 S. W. 876.

The judgment of the trial court in favor of Vestal is affirmed, but that in favor of the father is reversed, and his cause remanded for a new trial, unless he shall, within 15 days from the entry of this order, enter a remittitur in this court for the sum of $43.80, with accrued interest thereon, and in which event the remaining portion of his judgment will be affirmed.

The costs of this appeal are taxed one-half against appellant and one-half against John Spencer personally.