ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. DOUTHIT et al. (No. 8027.) *

(Court of Civil Appeals of Texas. Dallas. Nov. 23, 1918. Rehearing Denied Jan. 18, 1919.)

1. TRIAL ⬤=420 — INSTRUCTED VERDICT — WAIVER.

Where defendant's motion for an instructed verdict in its favor, made after plaintiffs had closed their evidence in chief, was overruled, and defendant then proceeded to introduce testimony, all rights to complaint of the court's failure to grant the motion were waived.

2. RAILROADS ⬤=369(3) — LICENSEES — CARE REQUIRED.

A railroad owes a mere licensee upon its tracks the duty to exercise ordinary care to avoid injuring him, including the duty to keep a proper lookout to discover his presence on the track and to give warning of the approach of a train.

3. RAILROADS ⬤=356(2) — PERSONS USING ROADBED—HABITUAL USE—DUTY OF RAILROAD.

If the portion of a roadbed of a railway company has been commonly and habitually used for a long time by the public as a footpath, with the knowledge and acquiescence of the company, it is considered as having licensed the public to use such portion of its roadbed for that purpose.

4. RAILROADS ⬤=398(1)—HABITUAL USE OF ROADBED—ACQUIESCENCE—SUFFICIENCY OF EVIDENCE.

In an action for death on defendant's track, evidence held sufficient to sustain a finding that the company had knowingly permitted the public to use its roadbed at the point where the accident occurred.

5. RAILROADS ⬤=398(2)—PERSONS ON TRACK —HABITUAL USE OF ROADBED—NEGLIGENCE —SUFFICIENCY OF EVIDENCE.

In action for death on railroad track at a point habitually used by the public, evidence held sufficient to sustain a finding that the servants operating the train failed to keep a proper lookout to discover the deceased.

6. RAILROADS ⬤=398(2)—PERSONS ON TRACK —DEATH AT POINT HABITUALLY USED BY PUBLIC—PROXIMATE CAUSE.

In an action for death at a point on defendant's railroad track habitually used by the public, evidence held to warrant a finding that the negligent failure to keep a lookout and to give warning was the proximate cause of the accident.

7. RAILROADS ⬤=350(1)—DEATH AT CROSSING—PLACE OF ACCIDENT—QUESTION FOR JURY.

In an action for the death of a person killed on defendant's railroad track, whether deceased was at a crossing when struck held for the jury.

8. RAILROADS ⬤=398(1) — PERSONS ON TRACK.

In an action for death of person at night on a railroad track, evidence held to warrant a

finding that the deceased was not sitting or lying on the track when struck, although nobody saw the accident.

**9. RAILROADS ⚖⚓312(7) — STATUTORY SIGNALS—CROSSINGS.**

A place on a railroad track where persons on foot and in vehicles habitually crossed, with the knowledge and without the objection of a railroad, for a number of years, and where its employés operating its train over such crossing might expect persons to be at any time of the day or night, imposed upon the company the duty to give statutory signals.

**10. RAILROADS ⚖⚓370—PERSONS ON TRACK—DUTY TO GIVE WARNING.**

If ordinary care would require a railroad to give warning of the approach of its trains by the blowing of whistles and the ringing of bells, at a place on the track habitually used by the public, failure to give such warning would be actionable negligence.

**11. RAILROADS ⚖⚓369(3) — PERSONS ON TRACK—TRESPASSERS.**

A railroad is guilty of actionable negligence in failing to exercise ordinary care to discover and avoid injuring persons on the track at such places and upon such occasions as one of ordinary prudence would expect to find them, and whether such persons are trespassers or rightfully upon the track makes no difference, apart from issues of contributory negligence.

**12. RAILROADS ⚖⚓350(13) — PERSONS ON TRACK—CONTRIBUTORY NEGLIGENCE.**

The act of a person going upon a railroad track at a public crossing, or where the railroad has expressly or impliedly licensed the act, is not negligence per se.

**13. RAILROADS ⚖⚓398(4)—DEATH ON TRACK—CONTRIBUTORY NEGLIGENCE.**

In an action for death at a point upon a railroad track habitually used by the public, evidence *held* to warrant a finding that deceased was not guilty of contributory negligence.

**14. RAILROADS ⚖⚓381(4) — PERSONS ON TRACK—ASSUMPTION OF RISK.**

In an action for death on railroad track at a point habitually used by the public, the law of assumed risk does not apply.

**15. RAILROADS ⚖⚓381(4)—HABITUAL USE OF ROADBED—CONTRIBUTORY NEGLIGENCE.**

A person was not guilty of contributory negligence in going upon a railroad track at a point habitually used by the public, where there was no other convenient way of reaching his destination, or where there was another convenient way, but he had no knowledge of it.

Appeal from District Court, Hunt County; Wm. Pierson, Judge.

Suit by Mrs. Elizabeth Douthit for herself and as next friend for her children, against the St. Louis Southwestern Railway Company of Texas. Judgment for plaintiffs, and defendant appeals. Affirmed.

E. B. Perkins, of Dallas, and Crosby & Harrell, of Greenville, for appellant.

B. Q. Evans, of Greenville, and W. A. Shields, of Houston, for appellees.

TALBOT, J. The appellee Mrs. Elizabeth Douthit brought this suit for herself and as next friend for her four minor children to recover of appellant damages sustained on account of the death of her husband and the father of said children, Jeff Douthit, who it is alleged was killed on November 5, 1916, by being negligently struck by one of appellant's trains. The petition alleges that the deceased was struck and killed while upon or near appellant's railroad track, about one mile east or northeast of the town of Josephine, and at or near a dirt road crossing maintained by appellant, and which, by long-continued and constant use on the part of the public, with the knowledge and consent, or without objection, of appellant, had become a public crossing; that appellant's railroad track between the town of Josephine and said crossing, and for a considerable distance eastward beyond said crossing, had been commonly, habitually, and notoriously used for a number of years as a pathway by a great many persons in going to and returning from said town of Josephine, with the knowledge and consent of appellant or without objection on its part. It is further alleged that the servants of appellant operating the locomotive and train which struck and killed the deceased, Jeff Douthit, negligently failed to keep a proper lookout for persons who might be on its track between Josephine and said dirt road crossing, or for persons upon and using the said crossing, and negligently failed in approaching said crossing to ring the bell or blow the whistle of the locomotive drawing said train, as required by law, or in any manner to warn persons who might be walking upon or near the railroad track between the town of Josephine and said crossing of the proximity of said train.

The appellant pleaded general and special demurrers, a general denial, and specially that the deceased assumed the risks whereby he was killed, and that he was guilty of contributory negligence, proximately causing his death, in that at the time of the alleged accident he was a trespasser upon defendant's track and roadbed at night, and that he was, through the voluntary use of intoxicating liquor, drunk or partially drunk, and that in an intoxicated condition he negligently went upon said track and remained there, either lying or sitting thereon, asleep, or in some other condition which prevented him from knowing of the approach of the train that struck him, if he was struck by a train; that his negligence in drinking intoxicating liquor just before he went upon or near defendant's track, and his negligence in remaining

upon said track and failing to get off said track upon the approach of one of defendant's trains, or his failure to look or listen for the approach of a train, was contributory negligence, which proximately caused his death. Appellant further pleaded that the crossing at which it was alleged that Jeff Douthit was killed was not a public crossing, and that there was no public road leading over and across the defendant's track or right of way at said place, but that the right of way was fenced, and that the crossing mentioned in plaintiff's petition as the place at which Jeff Douthit was killed was a private crossing, inclosed by gates. Appellant further pleaded that there was another convenient and safer way by which the deceased could have traveled from Josephine to his home at the time he was killed, and that the way along and over defendant's track was a more hazardous and dangerous way, and that deceased voluntarily chose to travel the more dangerous way, and in so doing he assumed the risks thereof, and, if he was struck and killed by one of defendant's trains, it was the result of his own negligence in choosing the more dangerous route home, and was one of the risks assumed by him in voluntarily choosing to travel that way. When appellees closed their evidence and rested their case the appellant presented a motion praying the court to instruct the jury to return a verdict in its favor, because appellees' evidence failed to show any actionable negligence on the part of appellant, and because the uncontradicted evidence showed that the deceased was guilty of contributory negligence and assumed the risk of injury in that he chose to walk upon appellant's right of way when he had a convenient and safer way by which he could have traveled home, etc. This motion was overruled, and, at the conclusion of the introduction of all the evidence, appellant presented and requested the court to give a special charge to the effect that under the evidence the appellees were not entitled to recover and they would return a verdict in appellant's favor. This special charge was refused, and the case submitted to the jury on a general charge. A verdict in favor of the appellees for $4,500 was returned and, judgment thereon entered.

The first assignment of error complains of the court's action in overruling appellant's motion for an instructed verdict at the close of the testimony offered by appellees, and the second in refusing to give its special charge directing the jury to return a verdict in its favor requested at the conclusion of the introduction of all of the evidence.

The deceased was killed at a crossing generally used by the public soon after dark on Sunday evening, June 5, 1916. This crossing is about a mile northeast of Josephine, and for about one-half mile southwest thereof the track runs straight, and at a down grade to the crossing. The appellant's road was fenced and gates put in at the crossing to enable persons desiring to use it to do so. The crossing itself was practically level on the southeast side. It is upon a fill at the east end of a cut, and this fill causes the railway to be on an embankment, so that the north side of the crossing is some three feet higher than the level of the road to the north thereof; yet there is no jump-off, but a gradual sloping of the dirt road crossing. The deceased resided about a quarter of a mile north of this crossing. The railway track of the defendant from Josephine to the crossing and beyond that point was, and had been for a number of years, commonly and habitually used by pedestrians, both night and day, going back and forth to Josephine from the neighborhood in which Douthit resided and beyond. There was a path upon each side of the railway track near the end of the ties, but there was no path in the center of the track. There was a public road from Josephine by which Douthit's home could be reached. To do so by this route you would have to go due north from Josephine, and then turn east some distance, and then go south about 150 yards. It was about 500 or 600 yards nearer to go down appellant's railroad track to the crossing near where the dead body of the deceased was found, and then north to his home, than it was to travel the public road.

On the evening of his death Douthit left the town of Josephine, where he had spent the day, for his home. He had been drinking some during the day, and carried with him a suitcase containing some liquor, which he had bought in Dallas the day before. He was not drunk when he left Josephine; witnesses who saw him just before he left Josephine said they regarded him as perfectly sober. He was last seen alive walking upon the defendant's railroad track going east and towards his home. This, according to the testimony of one witness, was about 15 or 20 minutes before the Lone Star Special, a fast train operated by appellant, passed Josephine going east, and in the same direction that Douthit was going when last seen. This train was due to pass Josephine at 7:03, and there is no evidence that it was late. No other train, so far as disclosed by the evidence, passed over this track before midnight. The body of Douthit was not found until the next morning. No witness saw Douthit killed. When first discovered his body was lying about 100 feet northeast from the crossing in question, and from 12 to 20 feet from the north or northwest end of the cross-ties. The suitcase was broken up, and the glass from one, and possibly two, broken bottles and parts of the suitcase were scattered along on the north side of the track, from the ends of the planks on the crossing

in the direction of where the body was lying. A bottle of alcohol was also found intact. From the ends of the planks of the crossing, and outside thereof from 12 to 15 inches, it looked like something had been dragged which made a trail from the end of the planks to where the body was lying. This trail or mark alongside the track did not vary in distance from the track. The back of the deceased's head was knocked away, and portions of the brains were found, the smaller about 6 feet from the crossing, and the larger about 15 or 20 feet. That portion of the head knocked off was more to the left side. The other bruises and wounds on the body were a deep cut on the left temple, bruises on the left cheek, the left arm was broken near the shoulder blade, the left side was crushed, the right leg was broken in two places, and the left foot bruised. The sole and heel of the left shoe were also torn off or nearly so. On the person of the deceased there was a purse in the breast pocket of his coat containing $30 or $35 in currency and also his watch. The watch chain was broken and a part of it lying upon the ground. The watch was then running. Five dollars in silver and some loose change were also found on his person. The blood in the wounds was dry, and the body cold and stiff. There is no evidence of any kind or character indicating that Douthit met his death in any way except by being struck by the pilot beam or some other projecting part of the engine drawing the train that evidently killed him, either while walking upon or turning to leave one of the paths alongside of the railway track. The engineer and fireman of the train known as the Lone Star Special, and which passed Josephine a short time after the deceased left that town going east on appellant's railroad, each testified that he did not see Douthit or know anything about his being struck until after the night of the accident. Other witnesses testified that this train did not sound the whistle generally sounded before reaching this crossing; that the approach to the crossing from the west was a down grade, and often trains ran down this grade not under steam, and without making much noise. The evening the deceased met his death the moon was shining brightly. The usual way for one, who had traveled down the railroad track from Josephine, to reach Douthit's home, was to leave the track at this crossing, turn to his left, and then go north. Other facts will probably appear in the discussion of the question for decision.

[1] As shown above, appellant's first assignment of error complains of the trial court's action in overruling its motion for an instructed verdict in its favor made after appellees had closed their evidence in chief. This assignment must be overruled. The record discloses that appellant did not stand upon this motion, but after it was overruled proceeded to introduce testimony. By electing to introduce further testimony appellant waived all rights to complain of the court's failure to grant its motion, and hence there is no merit in his contention. Railway Co. v. Saunders, 103 S. W. 459; Goggan v. Goggan, 146 S. W. 968; Railway Co. v. Hall, 156 S. W. 356; Grand Temple and Tabernacle, etc., v. Johnson, 156 S. W. 532; Peacock v. Coltrane, 156 S. W. 1087; Denton v. English, 157 S. W. 264. The appellant, however, at the conclusion of all the testimony, prepared and requested the court to give a special charge directing the jury to return a verdict in its favor, and the refusal of this charge is made the basis of the second assignment of error. The only proposition advanced under this assignment is as follows:

"In an action for death of a person alleged to have been killed by a train, mere proof of an unexplained killing, and of the fact that the defendant's agents and servants in charge of one of its trains failed to blow the whistle or ring the bell, is not sufficient evidence to entitle plaintiffs to recover damages for deceased's death, especially where there is no evidence showing the manner in which the deceased was killed, or tending to show that the failure to blow the whistle or to ring the bell was the proximate cause of the death of deceased."

[2-13] The question presented is whether or not the evidence adduced at the trial in support of the appellee's action was sufficient to warrant the submission of the case to the jury and the verdict rendered by them. The contention of appellant is predicated upon the case of Railway Co. v. Shoemaker, 98 Tex. 451, 84 S. W. 1049, and cases in line with it, and it insists that this case is ruled thereby. In this view we do not concur, and in differing with the appellant and its counsel we have not failed to recognize the rule that made it incumbent upon appellees to show, in order to establish liability on the part of the appellant for the death of the deceased, Douthit, not only that appellant was guilty of negligence in respect to his death, but that such negligence was the proximate cause thereof. Our conclusion is that from the circumstances in evidence the jury was authorized to infer the facts from which the liability of appellant for the death of Douthit would result. It very conclusively appears that he was struck and killed by appellant's train at or very near the crossing in question, and the evidence is amply sufficient to show that he was not a trespasser, but where he had a legal right to be, if said crossing should be regarded as a public highway, and, if not such highway, then he was a licensee upon said crossing or that portion of appellant's track where he was struck. If a mere licensee, appellant owed him the duty to exercise ordinary care to avoid injuring him. This included the duty to keep a proper lookout to discover his presence on the track

and to give warning of the approach of the train. The law of this state is that if a portion of the roadbed of a railway company has been commonly and habitually used for a long time by the public as a footpath, with the knowledge and acquiescence of the company, it is considered as having licensed the public to use such portion of its roadbed for that purpose. Railway Co. v. Matthews, 99 Tex. 160, 88 S. W. 192, and cases there cited. The evidence was also sufficient to justify the jury's finding, necessarily embraced in their verdict under the charge of the court, that appellant had knowingly permitted the public to use its roadbed between the town of Josephine and the crossing where the accident which resulted in Douthit's death occurred, and for some distance beyond said crossing, for a number of years as a pathway, and had knowingly permitted said crossing itself, whether it be regarded as a public or private crossing, to be used by both pedestrians and persons traveling in vehicles as a passway over its roadbed, and that the servants of appellant, operating the train that struck and killed Douthit negligently failed to keep a proper lookout to discover him, and negligently failed to give notice and warning of the approach of said train by sounding the whistle or ringing the bell and that such negligence was the proximate cause of his death. If such was the character of the evidence, and we think it was, the case is unlike Railway Co. v. Shoemaker, supra, and similar cases. In those cases the plaintiffs failed chiefly because it was impossible to say from the evidence adduced that the deceased at the time of the accident was at a crossing, or that the failure to keep a proper lookout or to give warning of the approach of the train by giving the signals was the proximate cause of the deaths. In Railway Co. v. Shoemaker the court said:

"But upon this question of proximate cause, in our opinion, the case hopelessly fails. No one can say from the evidence that the boys (Kitled) were at the crossing or that the failure to give the signals had anything to do with the deaths. So far as any inference can be drawn from the appearances stated, it is that they were upon the track and away from the crossing."

The Supreme Court further said in that case that the failure of the engineer to keep a proper lookout, either from incapacity or other reason, could only be deemed the proximate cause of the deaths when it appeared that the keeping of it would have prevented the accident, and that no inference of that fact could be drawn from the evidence. This we think is not true in the case at bar. From the proximity of the deceased's body to the crossing, the location of the wounds upon it, the broken parts of his suitcase, and other articles of property in his possession when he left Josephine, which were found scatter-ed along the railroad track eastward from the crossing, the inference is clear that the deceased was at the crossing when struck by appellant's train. The conclusion is warranted that he walked east after leaving the town of Josephine upon appellant's railroad track; that it took him about 15 or 20 minutes to walk from Josephine to the crossing; and hence when the train struck him he had been upon the track about that length of time. It is also a reasonable inference to be drawn, from the location of the wounds upon the deceased's body, that when struck by the train he was in the act of leaving the railroad track by turning north in the direction of his home, thereby presenting the left side of his body to the approaching train. The undisputed testimony is that all the wounds inflicted by the collision, except the injury to the right leg, were upon the left side of the body. There was a deep cut in the left temple, a bruise on the left cheek, the left arm was broken, the left foot bruised, and the left side crushed. A part of the head was also knocked off, and this wound was "more to the left side." There is no evidence that the deceased was sitting or lying on the railroad track when struck, as is contended by appellant. Evidently he was not; for, had he been in either of those positions when the collision occurred, undoubtedly his body would have been crushed and mangled otherwise than it was. The nature of the injuries inflicted upon the body, and the distance the body was hurled forward and from the railroad track by the impact of the train, indicate unmistakably that the deceased was not sitting or lying on the track when struck, but that he was on his feet, with his body erect. The road crossing at which the deceased's body was struck was not a public crossing in the sense that it had been made so by action of the commissioners' court of the county; but it had been constructed by appellant and recognized by it, it seems to us, as a public highway, and, if not so recognized, it was unquestionably a place where persons on foot and in vehicles habitually crossed the railroad with the knowledge and without objection of appellant for a number of years, and where its employés operating its trains over such crossing might expect persons to be at any time of the day or night. This, it occurs to us, imposed upon appellant's train operatives the duty to give the statutory signals in approaching the crossing; but, if not, it did impose upon them the duty to exercise ordinary care to discover and avoid injuring persons using the crossing; and, if such care required the sounding of the whistle or the ringing of the bell in approaching said crossing, the failure to perform that duty would be negligence, and, if such negligence should proximately cause injury to a person attempting to use the crossing, the railway company would be lia-

ble therefor. Whether the operatives of the train that struck and killed Douthit negligently failed to sound the whistle or ring the bell of the locomotive drawing said train, and such failure was the proximate cause of Douthit's death, were questions of fact for the jury. And that the operatives of said train negligently failed to keep a proper lookout for persons who might be expected to be at said crossing the evening Douthit was killed, and that such negligence was the proximate cause of Douthit's death, are reasonable inferences to be drawn from the circumstances in evidence. The railroad for the distance of at least a half mile west of the crossing and the direction from which the train approached was straight and unobstructed. The locomotive was carrying a bright headlight, and by reason thereof a person upon or near the crossing could be seen by those operating the locomotive at a long distance from the crossing, such distance as would warrant the inference that, if a proper lookout had been kept, the deceased would have been discovered, and the train, by the exercise of ordinary care, could, and probably would, have been stopped, or its speed so slackened as to have avoided striking the deceased. At any rate, we are of the opinion that it cannot be said as a matter of law that the facts and circumstances shown were insufficient to warrant the submission of the case to the jury. It has been several times held by the Supreme Court of this state that—

"a railroad company is guilty of actionable negligence in failing to exercise ordinary care to discover and avoid injuring persons upon the track at such places and upon such occasions as one of ordinary prudence would expect to find them; and whether such persons are trespassers or rightfully upon the track makes no difference in the determination of the issue of the company's negligence in that respect, considered separately and apart from issues of contributory negligence of the person injured." Railway Co. v. Watkins, 88 Tex. 20, 29 S. W. 232; Railway Co. v. Malone, 102 Tex. 269, 115 S. W. 1158; Railway Co. v. Shiflet, 98 Tex. 326, 83 S. W. 677; Railway Co. v. West, 174 S. W. 287.

The rule is also well established that the act of a person going upon a railroad track at a public crossing or where the railroad has expressly or impliedly licensed the act is not negligence per se. Railway Co. v. Matthews, 99 Tex. 160, 88 S. W. 192; Washington v. Railway Co., 90 Tex. 314, 38 S. W. 764; Lee v. Railway Co., 89 Tex. 583, 36 S. W. 63; Railway Co. v. Crosnoe, 72 Tex. 79, 10 S. W. 342. The issue of contributory negligence was submitted to the jury in the present case and by them resolved in favor of the appellees. Being unable to say, as a matter of law arising upon the evidence, that the appellees were not entitled to recover,

the assignment of error under consideration will be overruled.

[14] The third assignment of error complains of the court's action in refusing a special charge requested by appellant to the effect that if there was another convenient and safer way from Josephine to the home of the deceased, and he voluntarily chose the more dangerous way, by traveling on appellant's railroad track, he thereby assumed the dangers incident to traveling the more dangerous way, and if he was struck and killed by one of appellant's trains as a result of such choice to find for appellant. A similar, though perhaps a more accurate, charge was requested and refused in Railway Co. v. Broomhead, 140 S. W. 820, in which a writ of error was refused; and in overruling an assignment of error complaining of its refusal the Court of Civil Appeals for the Fourth District, speaking through Mr. Justice Fly, said:

"The charge is fatally incorrect and defective, because it instructed the jury to find that the deceased had assumed a risk, when the law of assumed risk had no place in the case, contributory negligence alone being involved."

This holding, we think, correct, and, following it, the assignment under consideration is overruled. The case is distinguishable in its facts from the case of Holt v. Texas Midland Railroad, 160 S. W. 327, and not ruled thereby.

[15] The basis of the fourth assignment of error is the refusal of the court to give the following special charge requested by appellant:

"If you believe from the evidence that there was another and safer way from Josephine to the home of the deceased, which the deceased could have gone, and that to travel on the defendant's railroad track was the more dangerous way, and that a person of ordinary prudence, situated as the deceased was, would have chosen the safer way, and that in choosing the other way he did not exercise the degree of care that would have been exercised by a person of ordinary prudence, you will find for the defendant."

This charge is defective, and should not have been given because it leaves out of consideration altogether the question of another convenient way in which the deceased could have gone to his home, and would have authorized a finding by the jury that he was guilty of negligence in traveling on appellant's railroad track, if there was "another and safer way" he could have gone to his home, whether he knew of such way or not. The court did instruct the jury, among other things, in the general charge, that if they believed from the evidence that the deceased was struck and killed by one of appellant's trains, and that in using appellant's railroad track he failed to use ordinary care for his own safety, to find for appellant.

The questions presented by the fifth and last assignment of error have been considered and decided against appellant in the consideration and disposition made of its second assignment, and require no further discussion.

The judgment of the district court is affirmed.

---

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes