HOUSTON, EAST & WEST TEXAS RAILWAY COMPANY v. VIRGIL SALLEE.

Decided May 13, 1909.

**1.—Negligence—Railway—Injury to Person on Track—Lookout.**

While it is incumbent on the servant of a railway operating a train to use ordinary care to discover persons upon the track at all times and places, and while the absence of such care resulting in injury to a person who is without negligence in being on the track, will render the company responsible to him in damages, it can not be said that the exercise of ordinary care to so discover and prevent injury to persons upon or in dangerous proximity to the track should prompt the operatives to stop the train upon seeing an object on or near the track which could not by the use of ordinary care be determined by them to be a person.

**2.—Same.**

Where the sole issue submitted was negligence vel non on the part of the operatives of the train which struck and injured a child of tender years, in

failing to exercise ordinary care in keeping a lookout to discover her on the track, a prima facie case was probably made against the railway company by showing that the child was struck and injured by the passing train in daylight at a point where the track was straight and free from obstructions reasonably calculated to obscure a view of the track; but the testimony of the engineer and fireman, who were the only two persons witnessing the casualty, being that they were looking down the track and discovered an object that looked like a piece of red cloth by the side of the track, but neither knew that it was the clothing worn by a child until they saw the child raise its head from between the end of the ties, and that then the engine was too near the child to be stopped before reaching the point, and such testimony being corroborated rather than weakened by the circumstances shown, a verdict and judgment against the company was unwarranted.

Appeal from the District Court of Montgomery County. Tried below before Hon. L. B. Hightower.

*Baker, Botts, Parker & Garwood* and *Jno. T. Garrison*, for appellant.

*J. Llewellyn* and *A. L. Kayser*, for appellee.

McMEANS, Associate Justice.—Virgil Sallee brought this suit against the Houston, East & West Texas Railway Company for himself and as next friend for his minor child, Annabel Sallee, to recover damages growing out of personal injuries received by said minor alleged to have been caused by the negligence of the railway company.

Plaintiff alleged that the child, then twenty months old, wandered from the nearby residence of its parents upon or in dangerous proximity to the track of defendant's railroad and was struck and injured by a passing engine and cars composing a freight train then being operated over the road. Liability is predicated, in the plaintiff's petition, on the alleged negligence of the operatives of the freight train in failing to use ordinary care to discover the presence of the child on or near the track in time to have prevented injury to her, and in failing to use the degree of care required by law to prevent injury to the child after its peril was actually discovered by them.

The defendant answered by general demurrer and special exceptions, and pleaded contributory negligence on the part of the parents of the child in permitting her to go upon or near the track.

The case was tried before a jury, and a verdict was returned in favor of the railway company against Virgil Sallee, the father, and against the railway company in favor of the child for $2,500, upon which verdict judgment was duly entered. From the judgment in favor of the child, Annabel Sallee, the railway company has appealed.

We think the evidence establishes conclusively that the child was struck by some part of a car in the train. The mother, Mrs. Sallee, testified that about ten minutes before the train passed the child was with her on the gallery of her residence; that she left the child there about 10:30 a. m., when she went into the kitchen to begin the preparation of dinner, and she had thus been engaged about ten minutes when her attention was attracted by hearing two sharp blasts of a locomotive whistle; that she hastened to the front gallery to see what the matter

was, and to see where her child was, and as she came out on the gallery she saw the child, which had on a bright red dress, lying on the end of the cross-ties on the opposite side of the track; that the engine and one car had then passed the child; that it looked to her as if every wheel would strike the child as it passed; that she immediately ran toward the place, and by the time she got there the train came to a stop and the conductor picked the child up and handed it to her through the opening between two of the cars; that just at this time the child began to cry; that it had received a cut in the top of the head, beginning at the edge of the hair and running back about the center of the head, and that in the region of the wound there was blood and what appeared to be grease; that her arm was also hurt. She further testified that the railroad track for about a half mile in the direction from which the train came was straight and the ground clean and free from weeds, and that there was nothing to obstruct the view of the operatives of the train from the time the train came on the straight stretch of track until it reached the point where the child was. Her testimony on this point was corroborated. She further said that when she looked and saw the child it was lying on the ends of the cross-ties, on its back, with its head in the direction the train was going, and remained in that condition until picked up by the conductor.

There was also testimony to the effect that there was much use made of the track at this point by people walking on the track, and especially by the children of the neighborhood and of the village of Splendora, in going to and from school. She further testified that when she looked the train was coming rapidly to a stop, and did stop after five or six cars had passed the child.

The engineer of the train in question testified that from Splendora, which is about a quarter of a mile south of the place where the child was, the track is on a down-grade; that the up-grade began about opposite Mr. Sallee's house and continued until the section house, one-eighth or one-fourth of a mile beyond, was reached; that he had about twenty or twenty-five cars and was running at a speed of twenty or twenty-five miles per hour at the time he passed Splendora, and after passing that point he shut off steam and was just rolling along to make a stop at the section house; that when he reached a distance of about two or two and a half telegraph poles from where the child was he saw on the outside of the track and at the end of the cross-ties what appeared to be a piece of red cloth, and that he watched this object until within the distance of about one and a half telegraph poles, when the child raised its head from between the ends of two cross-ties, and he then for the first time knew that the red object was a child; that he immediately applied the emergency air-brake and brought the train to a stop as soon as it could be done, and the train stopped after the engine had passed the child the distance of five car-lengths, or 150 feet. It was shown that telegraph poles are 150 or 160 feet apart. The engineer further testified that he was keeping a lookout for persons on the track all the time; that as near as he could tell as to the position of the child, before it raised up, it was lying down between the ends of two ties on its hands and face, with its head down beneath the ties, and the first that apprised him that the object was animate was when

the child raised up its head; that the ground between the end of the ties was hollowed out and of sufficient depth to cover a little child like Annabel; that after he discovered it was a child he used every effort known to himself, and, he supposed, to any one else who runs a locomotive, to stop, and did all that could possibly be done to stop the train in time to prevent the injury.

The fireman testified that after the train passed Splendora he saw, about eight or nine hundred feet ahead, something on the right side of the track that looked to him like a small piece of red cloth; that at that distance it looked like a red speck; that he watched it until the child raised up, and that up to that time the object looked no larger than a man's hand; that he did not at any time tell the engineer to stop.

The father and mother of the child testified that the ends of the cross-ties, at the place where the child was hurt, were partly sunk in the ground, and the top of the ties at their ends came up about three inches above the surface of the earth.

The railway company, in order to determine the distance that a person occupying the position that the child occupied, as testified to by the engineer, could be seen by an engineer operating a locomotive at the place of injury, conducted the following experiment. A full-grown negro man, dressed in a blue jumper and overalls, was placed in the same position, with his head at the end of the ties and his feet extending directly out; the witness Yarbrough, a resident of Splendora and not in the employment of the railway company, then got upon a locomotive, which was only a short distance away, and sat just behind the engineer and on the same side of the cab; the engine then began to back slowly toward Splendora. Yarbrough testified that at the distance of two telegraph poles he would tell that the object was a human, but at the third pole he could hardly see anything; at the fourth pole the object in view appeared to be no larger than a man's hand, and a little past the fourth pole nothing could be seen at all. The locomotive was then backed to Splendora, and then run toward the negro at the rate of ten or fifteen miles per hour; that in thus approaching, the object could not be distinguished as a person until within the distance of two telegraph poles; that the track at that time and place, relative to the growth of grass and weeds, was in an average condition. Yarbrough's testimony was substantially corroborated by that of the engineer who assisted in conducting the experiment.

By an appropriate assignment of error appellant complains of the refusal of the trial court to grant a new trial on the ground that the verdict and judgment are unsupported by the evidence and contrary to the overwhelming weight of the testimony in that the uncontradicted evidence shows that the child was lying down on the east side of the track between the ties on the outside of the rail, and that it could not have been seen by those operating the train in time to have prevented the injury, and that after the child was discovered the operatives did everything in their power consistent with the safety of the train to stop the train and avert the accident.

The issue of discovered peril was not submitted by the court in its charge to the jury, but the jury was limited to the single issue as to

whether the operatives used ordinary care in keeping a lookout to discover the child on the track.

The burden was upon the plaintiff to show negligence of the defendant in this regard, and the burden was probably discharged and a *prima facie* case made against defendant by showing that the child was struck and injured by a passing train, in daylight, at a point where the track was straight and free from obstructions reasonably calculated to obscure a view of the track. But the evidence does not stop here. There were only two persons that witnessed the casualty, and these were the engineer and fireman of the train. If their testimony is to be believed there was no such failure to keep a proper lookout as amounted to negligence. Both testified that they were looking down the track and that they discovered an object that looked like a piece of red cloth by the side of the track. Neither of them knew that the cloth was clothing worn by a child until they saw the child raise its head from between the end of the ties, and that the engine was then too near the child to be stopped before that point was reached. While it was incumbent upon the operatives of the train to use ordinary care to discover persons upon the track at all times and places, and while the absence of such care, resulting in injury to a person who is without negligence in being on the track, would render the railway company responsible to him in damages, it can not be said that the exercise of ordinary care to so discover and prevent injury to persons upon or in dangerous proximity to the track should prompt the operatives to stop the train upon seeing an object on or near the track which could not by the use of ordinary care be determined by them to be a person. (San Antonio & A. P. Ry. v. McMillan, 100 Texas, 564; Caldwell v. Houston & T. C. Ry., 117 S. W., 490.) The testimony of these two witnesses is corroborated rather than weakened by the other facts adduced. That the child was not upon the track, but at its side, is shown by the testimony of the mother to the effect that the child was lying on the end of the cross-ties when she saw it. It was evidently thrown there when it was struck by the passing car. Again, it is shown that the injury consisted of a cut on the top of the head—"creased," as one witness expressed it, which corroborates the testimony of the engineer that the child arose from a recumbent position from the side of the track as the train bore down upon it, no doubt raising itself just high enough to be struck on top of the head by some part of the engine or a passing car, and the experiment conducted by the railway company, as testified to by the witness, Yarbrough, shows that the child could not have been discovered by the engineer or fireman until the train was within such distance of the child as that it could not be stopped before the point of accident was reached.

The testimony of the two operatives of the train shows that in the operation of the train they used all the care the law required of them to discover persons upon the track. In the absence of some countervailing proof neither the court or the jury were warranted in disregarding their testimony. We think that the verdict and judgment was so against the great weight and preponderance of the testimony as to be clearly wrong, and for this reason the judgment of the court below must be reversed and the cause remanded.

We have examined the other assignments of error presented by appellant in its brief, and are of the opinion that there are no reversible errors pointed out in any of them, at least, none that will likely occur upon another trial.

For the reasons above given the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*

Application by appellee for writ of error dismissed for want of jurisdiction.