## SAN ANTONIO & A. P. RY. CO. v. McGILL et al. (No. 6187.)

(Court of Civil Appeals of Texas. Austin. April 28, 1920. Rehearing Denied June 16, 1920.)

**1. Railroads ⬡376(4) — Duty as to object discovered defined.**

When trainmen, discovering object on track, in the exercise of proper care, did not recognize it as a human being, it was not their duty to stop the train until they discovered that it was a man.

**2. Railroads ⬡400(8)—Negligence as to object discovered on track held for jury.**

In an action for death on railroad track, whether trainmen saw deceased in a position of peril and realized that the object was a man at a distance within which they could stop the train *held* a question for the jury, notwithstanding positive testimony of trainmen in defendant's favor.

**3. Railroads ⬡398(4)—Verdict on theory of discovered peril sustained by evidence.**

In action for death on a railroad track, evidence *held* sufficient to sustain a verdict in favor of plaintiff on a theory of discovered peril, notwithstanding the positive testimony of trainmen in defendant's favor.

**4. Railroads ⬡376(4)—Duty to stop on discovering person on track held correctly defined.**

An instruction that the defendant railway company owed the deceased no duty, except to exercise ordinary care in the use of all means within its power, consistent with the safety of the train and the people thereon, to avoid injuring deceased after his peril was discovered, is not erroneous as requiring the trainmen to exercise more than ordinary care.

**5. Trial ⬡260(1)—Instruction already covered properly refused.**

Court did not err in refusing to give a special requested instruction where the matter was covered by given instructions.

**6. Death ⬡72 — Evidence as to condition held not improper.**

In an action for death, evidence that one of the children of deceased was going to school when his father was killed and afterwards went to work, and that deceased had supported his family by labor, was not improper as immaterial and calculated to arouse sympathy.

**7. Appeal and error ⬡1050(2)—Admission of immaterial evidence harmless.**

In an action for death, admission of evidence that a child of decedent quit school on the death of his parent and went to work *held* not reversible, if error.

Error from District Court, Falls County; Prentice Oltorf, Judge.

Action by Mrs. Virginia McGill, for herself and as next friend of her seven minor children, against the San Antonio & Aransas Pass Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Boyle, Ezell & Grover, of San Antonio, and Pat M. Neff and Walton D. Taylor, both of Waco, for plaintiff in error.

Nat Llewellyn, of Marlin, for defendant in error.

BRADY, J. Mrs. Virginia McGill, for herself and as next friend of her seven minor children, brought this suit against San Antonio & Aransas Pass Railway Company for damages on account of the alleged negligent killing of their husband and father, J. D. McGill.

The case has been before this court before, the opinion on the former appeal being reported in 202 S. W. 338. The verdict and judgment on the former trial were for the plaintiffs for the sum of $10,000, and on this trial for $3,500, one-half to Mrs. McGill, and the remainder in equal proportions to the children.

The only issue submitted to the jury was discovered peril. The material facts are substantially the same as on the first trial, which are stated in the opinion of this court referred to above. Any additional or variant facts deemed material will be stated in the discussion of certain assignments relating to the sufficiency of the evidence.

Upon the former appeal the case was reversed and remanded, because of errors of law in the giving and refusing of certain charges. These errors seem to have been corrected on the present trial.

The first and second assignments of error raise the point that the court should have given a peremptory instruction for plaintiff in error, and that the verdict and judgment are not supported by even a scintilla of evidence showing or tending to show discovered peril. This same question was raised before, and this court held that the evidence was sufficient to raise the issue and for its submission to the jury. This conclusion is again challenged; and it is further claimed that the testimony is materially different on this trial. There is said to be a variance in the testimony of the witness Ben Springer as to the speed of the train, in that on the latter trial he stated that he would guess the train was running 12 or 15 miles an hour, but would not undertake to say that it was not running at least 18 miles an hour, and that he would not undertake to say in what distance the train could have been stopped. For the purposes of this appeal, the alleged variance in this witness' testimony will be assumed.

---

⬡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

It is also asserted that on the former trial there was no evidence before this court as to any grass and weeds growing up against the ties at the point deceased was lying when he was struck and killed, whereas on the present trial it was shown by at least three witnesses, introduced by plaintiffs and living near the scene of the accident, that grass was growing thick at the point of the accident, some 6 inches high, right up against the end of the ties, and that between the rails the grass was flush with the top of the rails. It is further claimed that the overwhelming preponderance of the testimony shows that all along by the ends of the ties there were numerous patches of old weeds 10 and 12 inches high. From the record it seems that the testimony of these witnesses did not relate to the situation, as to grass and weeds, at the point of the accident, but rather to the conditions in the vicinity, and generally along the railroad track and right of way. However, if it be concluded that this testimony reflected the conditions at the scene of the accident, yet the testimony on this point is conflicting. The witnesses Geo. Ellison, a brother-in-law of deceased, and Ben Springer, who was an employé of plaintiff in error at the time and was on the train that struck Mr. McGill, is to the effect that at the place where McGill was killed the track was clear, slightly up grade, and that there were no grass, weeds, or anything on that side of the track, or no grass or weeds to amount to anything.

It is conceded by counsel for plaintiff in error that the liability of a railway company, under the rule of discovered peril, may be shown by circumstances as well as by direct or positive evidence, and also that positive evidence of the employés of the railway company in charge of the train may be overcome by circumstances, but in such case the circumstances must be reasonably clear and satisfactory, and no resort can be had to mere conjecture. Railway v. Porter, 73 Tex. 304, 11 S. W. 324; Railway v. McMillan, 100 Tex. 562, 102 S. W. 103.

It is true that the engineer testified that he did not see the object, which afterwards proved to be McGill's body, until the train was about 200 feet from the deceased, when he saw an object near the right-hand rail or east rail of the train, which was going north; that at the time he could not tell whether the object was living or inanimate, and had passed the object before he discovered it was a human being; that the rails were clear when he was 200 feet away from the object, and that when he saw the same he immediately sounded the whistle and rang the bell, but the object did not move; that when he had reached a point about 60 feet from the object he first realized that it was something he ought not to strike, and he then applied the emergency brake, cut off the

steam, and did everything within his power to avert striking the object; that the train was then moving at about 18 to 20 miles an hour. This witness, however, also testified that he stopped the train, after shutting off the steam and applying the emergency, in about 200 feet, which in his opinion was a good stop, and that, if he had applied the brakes when he first saw the object, the train would not have killed McGill, but would have struck him lightly. At the time of the trial, he was still in the employ of plaintiff in error.

The fireman on the train testified that the train ran four or five car lengths, or about 160 feet, after the emergency brake was applied. It thus appears from the testimony of these witnesses that, if the engineer had cut off the steam and applied the emergency as soon as he saw the object on or near the track, the train would have been stopped in time to have averted the accident, or to have avoided killing McGill.

[1] It seems to be the rule, as announced in Railway Co. v. McMillan, supra, that if, when the trainmen discovered the object on the track, they, in the exercise of proper care, did not recognize it as a human being, it was not their duty to stop the train until they discovered that it was a man on the track. The question then is: Was there evidence before the jury to justify the inference that, notwithstanding the positive testimony of the engineer and fireman that they did not recognize the object as a human being, or something that should not be struck, until within 60 feet of it, or in passing it, they did, in fact, recognize that it was a human being when 200 feet away, and, in the exercise of ordinary care, should then have used the means at their command to avoid the injury. We have concluded that there was such evidence, which will be briefly indicated.

A retired expert engineer testified that on an engine on a straight track, with electrical headlight, one ought to be able to see an object on the track one-half a mile, but can see a man a shorter distance; that the bulk of a man sitting on the track, or an obstruction which ought not to be hit, could be seen for a half mile, and that one could tell at a distance of 300 or 400 yards that the object was a man, if it was lying in the middle of the track, or on the outside and close to the rail. His testimony was to the effect that an engineer could see such an object and realize it was a man at a distance of 300 or 400 yards as easily on the outside and close to the rail as if the body were on the inside, since it would be in plain view of the rays of the headlight, the same as if it were on the track. His testimony as to the distance in which the train could be stopped varies from that of the fireman and engineer, he having named the greater distance.

Now, in view of the testimony of the fire-

man that the train could have been and was stopped in a distance of about 160 feet, and of the engineer in a distance of 200 feet, and the testimony of the retired expert engineer that the object should have been recognized as a human body at a distance of 300 or 400 yards, we think it clear that it was for the jury to decide whether the trainmen saw McGill in a position of peril, and realized that the object was a man at a distance of 200 feet from it, notwithstanding their denial that they realized it was a human being at that distance, and whether, in the exercise of ordinary care, it was their duty at that very time to take the steps which afterwards proved would have averted the accident.

Plaintiff in error relies especially upon the following cases: Railway v. McMillan, supra; Caldwell v. Railway Co., 54 Tex. Civ. App. 399, 117 S. W. 490; and Railway v. Sallee, 56 Tex. Civ. App. 23, 120 S. W. 216—each of which is thought by us to be distinguishable on the facts.

In the McMillan Case it was pointed out by the Supreme Court that, after discovering the deceased, and recognizing that he was a human being, it was impossible to have stopped the train before he was struck, and also that the facts contradict any suggestion that, if the train had been checked, he would have gotten off the track. There does not appear to be any evidence whatever from which the jury might have concluded that the engineer or fireman recognized the object to be a man in time to have stopped the train, as we think appears in the instant case.

In the Caldwell Case it seems that the body was first discovered as an indistinguishable object on the track when the train was 300 feet from it, but was not discovered by the trainmen as the body of a human being until the train was within 75 or 80 feet from him. In that case the train ran 550 feet before it stopped after striking the deceased, and the evidence showed that the train could not have been stopped within less than 510 feet after applying the brakes and partially applying the reverse lever.

In the Sallee Case the issue of discovered peril was not submitted by the court; and there was no evidence tending to controvert that of the engineer and fireman to the effect that they used ordinary care in keeping a lookout to discover persons upon the track.

[2, 3] While the evidence is circumstantial, we think it was sufficient to make it an issue for the jury that the servants of plaintiff in error discovered deceased in a position of peril in time to have avoided the accident, after realizing that he was a man, and is likewise sufficient to support the verdict. Therefore the first and second assignments of error are overruled.

[4] The next assignment complains of the charge of the court "that the defendant railway company owed deceased no duty except to exercise ordinary care in the use of all means within its power, consistent with the safety of the train and the people thereon, to avoid injuring J. D. McGill, after his peril was discovered," because this placed a more onerous burden upon defendant than was required by law, in that it was required only to exercise ordinary care, and not required to use all of the means at its command. We think the charge is not open to this criticism, and that it embodies a correct rule of law. Railway v. McMillan, 100 Tex. at page 564, 102 S. W. 103.

On the former trial this same charge was given, except that it did not prescribe the standard of ordinary care in using all the means at the command of the operatives, but the charge was corrected to conform to the ruling of this court. We do not think that this charge can fairly be construed as instructing the jury that the railway company's employés were required to use all the means at their command, but that it merely informs the jury that it was their duty to use ordinary care to use all the means that the circumstances required to avoid injuring deceased. This we understand to be the law, and the assignment is overruled.

[5] It is sufficient reply to the next assignment, complaining of the refusal of the trial court to give special instruction No. 7 requested by defendant, that the law of the case was fairly given in the main charge and in special charges asked by defendant, and specially covered in special charge No. 12 requested by defendant the defense suggested in special instruction No. 7.

[6, 7] The remaining assignments of error relate to the admission, over defendant's objection, of certain testimony by which Fred McGill, one of the children of deceased, was permitted to state that at the time his father was killed he was going to school, and afterwards he stopped and went to work; and another witness was permitted to state that Mr. McGill had supported his family by his labor.

It is claimed that this testimony was immaterial and was prejudicial, in that it was reasonably calculated to arouse the sympathy of the jury and prejudice them against the defendant. The specific claim seems to be that this testimony was a persistent effort to parade the poverty of deceased or of his family before the jury, to enlist their sympathy.

We have examined the authorities cited in support of these assignments, and do not consider any of them in point. They each either involve testimony not relating to the true issues of the case or directly showing poverty.

One of the issues of this case was the pecuniary loss of Mrs. McGill and her minor

children through the negligent killing of the husband and father. In the effort to show that McGill did not contribute much to the support of his family, because he was a drinking man, and that the children did most of the work, counsel for plaintiff in error had developed on cross-examination of Joe Haynes, a witness for plaintiff, that McGill was a tenant farmer on his place, and that at the time he was killed he had a hired hand, because his children were in school. It seems that the testimony here objected to was in line with the testimony elicited by the attorneys of the railroad company; and it is shown by the court's qualification to the bill of exception that he sustained the objection to part of this testimony, but had not time to stop the witness before the answer was made, and that no motion was made to exclude. We think the testimony was relevant and material to show that McGill was supporting and educating his family, and upon the issue of the value of his services to his family. In any event, we do not think the admission of this evidence presents reversible error.

Being of the opinion that no reversible error has been shown, the judgment is affirmed.

Affirmed.